| 70 | 437 |
| 94 | 539 |

# Donegan's Adm'r *v.* Hentz.

*Bill in Equity by Assignee, to enforce Vendor's Lien on Land.*

1.  *Vendor's lien; waiver of.*—When the vendor executes a 'conveyance of the land to the purchaser, and accepts a distinct and separate security for the purchase-money—*e. g.*, a bond or note with a surety or indorser, a mortgage on other property, or a collateral deposit of stock or personal property—this is, *prima facie*, a waiver and abandonment of the lien on the land.

2.  *Same; assignment of note or bill for purchase-money.*—The assignee of a note or bill, given for the purchase-money of land, can stand in no better position than his assignor occupied, so far as relates to the lien on the land: if the lien was waived by taking a negotiable bill or note, with indorsers, for the purchase-money, it would not re-attach in favor of an assignee, although he acquired the note or bill in good faith, before maturity, in the usual course of trade, and for valuable consideration, and would be entitled to protection against any defense or equity affecting the instrument itself.

APPEAL from the Chancery Court of Madison.

Heard before the Hon. H. C. SPEAKE.

The bill in this case was filed on the 28th February, 1867, by James I. Donegan, against Mrs. Julia E. Hentz, Andrew Hentz, her husband, and several other persons; and sought to enforce a vendor's lien on a certain house and lot in Huntsville, of which said Hentz and wife were in possession, and which Mrs. Hentz claimed as her own, under a decree rendered in her favor by the Chancery Court of said county, on the 6th December, 1866, in a suit therein instituted by her against her husband. The lot was conveyed on the 1st October, 1853, by Samuel Coltart, as the administrator of Morris Smith, deceased, on a recited consideration of $1,500 in hand paid, to "A. Hentz & Co., a partnership formed on that day between said A. Hentz and John W. Scruggs, for the purpose of carrying on the manufacture of carriages, buggies, &c., in Huntsville. By the articles of co-partnership, a copy of which was made an exhibit to the bill in this case, each of the partners was to contribute $2,000 to the capital stock; and it is recited in the articles that "said Hentz does contribute to the concern, as capital, at $1,500, the house and lot this day conveyed to said A. Hentz & Co., by S. Coltart as administrator, and the further sum of $500." The partnership of A. Hentz & Co. continued to do business until the 16th February, 1861, when it was dis-

solved by mutual consent, Hentz buying out the interest of his co-partner in all the stock and property, at the price of $5,000. In payment of this sum, Hentz gave to said Scruggs two bills of exchange, for $2,500 each, "drawn by said Hentz, on Scruggs, Donegan & Co. of New Orleans, in favor of said John W. Scruggs; one being dated the 16th February, 1861, at twelve months, indorsed successively by said John W. Scruggs, James H. Scruggs, and S. E. Davidson, to complainant;" and the other "dated the 16th February, 1862, due at twelve months, and indorsed successively by the payee, John W. Scruggs, and Thomas W. White, to complainant." At the same time, Scruggs executed to Hentz his title-bond for the house and lot, which is nowhere set out in the record; and on the 11th August, 1863, he and his wife executed to Hentz a deed, with covenants of warranty, conveying his undivided half interest in the house and lot, on the recited consideration of $2,500 in hand paid; a copy of which deed was made an exhibit to the bill. The complainant was the owner and holder of these two bills of exchange; alleged that he purchased them in good faith, before maturity, in the usual course of business, for valuable consideration, and on the assurance of said Scruggs that they were a lien on the house and lot; and sought to enforce them as a lien against the property to the extent of $2,500, as the agreed value or amount of the purchase-money. The bill alleged, also, that Hentz was insolvent; that he had no funds in the hands of Scruggs, Donegan & Co. when he drew the bills of exchange, and no reasonable expectations of having any funds to meet them at maturity.

Mrs. Hentz filed her bill against her husband on the 22d October, 1866, alleging that the $1,500 paid to Coltart, as the price of the house and lot, was advanced by her father, Samuel Smithers, and was intended as an advancement to her; and that by mistake, "or some other cause unknown to her or her said father," and without the knowledge or consent of either of them, Coltart executed a deed to said Hentz & Co., instead of herself. The prayer of her bill was, that the legal title to the house and lot might, by the decree of the court, be divested out of her husband, and vested in herself. A decree *pro confesso* was entered against the husband; and on final hearing, on pleadings and proof, the chancellor rendered a decree for the complainant as prayed. The bill in this case alleged that this decree was a fraud on the rights of Donegan, as a creditor of Hentz; that the house and lot were conveyed by Coltart, without objection from either Mrs. Hentz or her father, to the firm of A. Hentz & Co.; that it was used and held as partnership property during the whole time the partnership continued, and constituted three-fourths of the capital contributed by Hentz

[Donegan's Adm'r v. Hentz.]

to the firm; and that the claim and interest of Mrs. Hentz, if any she had, was subordinate to the complainant's right to subject the house and lot to the payment of one half the amount due on the bills of exchange, as a vendor's lien for the unpaid purchase-money.

There was a demurrer to the bill for want of equity, because (among other grounds) it showed on its face that the alleged vendor's lien was waived, by the acceptance of the bills of exchange and the execution of a conveyance by Scruggs to Hentz. On final hearing, on pleadings and proof, without passing on the demurrer, the chancellor dismissed the bill, holding that the complainant was not entitled to relief; and his decree is now assigned as error.

HUMES & GORDON, for appellant, cited *Burns v. Taylor*, 23 Ala. 255; *Owen v. Moore*, 14 Ala. 646; *Roper v. McCook*, 7 Ala. 318; *Bozeman v. Ivey*, 49 Ala. 75; *Hanrick v. Walker*, 50 Ala. 34; *Haley v. Bennett*, 5 Porter, 452; 2 Brick. Digest, 515, § 129; *Williams v. Smith*, 2 Hill, N. Y. 301; *Swift v. Tyson*, 16 Peters, 1.

SOMERVILLE, J.—The decree of the chancellor in this cause must be affirmed, on the authority of *Walker, Ex'r, v. Struve*, at the present term.

The principle is there settled, that, when a vendor makes a sale of land, and *conveys the title* to the vendee, by deed properly executed, the vendor's lien for the unpaid purchase-money is presumptively abandoned and lost, in all cases where he accepts a distinct and separate security for the purchase-money; as, for example, a bond or note with surety or indorser, a mortgage on other property, or a collateral deposit of stock or other personal property. That such security will operate as a waiver of the lien, *prima facie*, liable, of course, to rebuttal by legal evidence, which is sufficient to overcome the presumption, was also decided by this court in *Walker v. Carroll*, 65 Ala. 61, and is fully sustained by the following authorities: 2 Wash. Real Prop., 3d ed. 90–91 [507–8]; 1 Lead. Cases Eq. (H. & W.) 364–5; *Lagow v. Bodolet*, 12 Amer. Dec. 263, and *note*; 1 Jones on Mortg. § 205, and *note* 5; 4 Wait's Act. & Def. 323; *Foster v. Athenæum*, 3 Ala. 302.

In this case, Scruggs made a conveyance of the title of the real estate in question to Hentz, his partner, and took personal security, in the form of a bill of exchange, with several indorsers, for the unpaid purchase-money. This was a waiver of the vendor's lien in the absence of legal evidence to the contrary.

Of course, Donegan, as the assignee or indorser of this bill, can stand in no better position than the original payee or ven-

[Evans, Fite, Porter & Co. v. Covington.]

dor, Scruggs, occupied.—*Coster's Ex'r v. Bank of Georgia*, 24 Ala. 37. It would avail nothing so far as concerns this point, that the appellant is a *bona fide* holder of the bills in question, for a valuable consideration, and in due course of trade. This fact might protect him against any defenses which would defeat the recovery by him, as against any party to such bills, of a personal judgment for their full amount. It would, in other words, only operate to exclude any defense or equity affecting the instrument *itself*. It could not re-attach a lien, which, as an incident of the debt, had been waived or abandoned by the transferror or indorser.—1 Brick. Dig. p. 276, § 345.

The decree of the chancellor is affirmed.

BRICKELL, C. J., not sitting.