INTERSTATE BUILDING & LOAN ASSOCIATION *v.* JULIET HAFTER.

BUILDING AND LOAN ASSOCIATIONS. *By-laws. Amendment. Vested rights.*
  A borrowing member of a building association, the by-laws of which
  were subject to amendment when he became a member and pro-
  cured the loan, has no such vested right under a by-law then in
  force fixing by estimation the number of monthly payments of
  dues and interest necessary to mature his stock and cancel his
  debt as affects the right of the association, on settlement before
  maturity, to demand a greater number of such payments under a
  subsequent by-law adopted prior to notice of withdrawal.

FROM the chancery court of Washington county.

HON. A. H. LONGINO, Chancellor.

The appellee, Mrs. Hafter, was the complainant in the court
below; the appellant, the building and loan association, was
the defendant there.   The opinion states the case.

*Brame & Alexander*, for appellants.

The written contract between the association and Mrs. Haf-
ter shows that it is not simply a contract of loan.   It is exe-
cuted in reference to the by-laws of the association, which are,
by express stipulation, made a part of such contract.   The by-
laws, taken in their entirety, show that the institution is a
mutual building and loan association, and that it does a co-
operative building and loan business.   To guard against mis-
takes of that nature the by-laws in question provided in the
last section thereof that either of the by-laws therein could be
amended or repealed by a majority vote of the directors at any
time in their judgment when they saw fit to do so.

Nowhere in the contract, nor in the by-laws, was there a
guaranty on the part of the association that the shares of stock
would mature in eighty-four or in any other stated number of

months.   It was estimated that such stock would mature in eighty-four months, but this was an estimate purely, on the part of the officers of the association, and was not made a matter of contract.   The right given under section 8 of article 5 was simply optional in the discretion of Theresa Hilzim and did not become vested until the acceptance by her of the right therein given.   She did not, at any time during the existence of said by-laws, give notice of her intention to accept the terms thereof.   She did not become a member of the association on condition, either express or implied, that the by-laws as they then existed should remain as they were, and she had no right to presume that they would so remain or at any time bind the association by her acting upon the supposition that they should so remain.   *Strohmenger* v. *Finsbury B. & L. Ass'n*, 66 L. J. Ch. N. S., 708; 1 Thompson on Corporations, sec. 906; *Schrick* v. *St. Louis, etc., Ass'n*, 34 Mo., 425; *Patterson* v. *Albany, etc., Ass'n*, 63 Ga., 377, sec. 3; *Georgia, etc., Ins. Co.* v. *Gibson*, 52 Ga., 640; Endlich, on Building and Loan Associations, sec. 109; *Pope* v. *City, etc., Ass'n*, 2 Ch., 311; *Wilson* v. *Building Society*, 22 Q. B. D., 381; *Rosenberg* v. *Building Society*, 22 Q. B. D., 373; Enlich on Building Associations, 272; Morawetz on Private Corporations, sec. 500a; 3 Am. & Eng. Enc. L. (new), 1084, note 3; *Supreme Commandery* v. *Ainsworth*, 71 Ala., 449; *Knights of Pythias* v. *Knight*, 117 Ind., 489; *Lawson* v. *Howell*, 118 Cal., 613; *Dornes* v. *Knights of Pythias*, 75 Miss., 481.

*A Lewenthal, Jr.*, for appellee.

The repealed section (8) begins with "Loans, on real estate may be repaid at any time after one year," etc.   Had this provision been incorporated in the deed of trust counsel would hardly contend against the position assumed in the bill, yet the answer admits that the loan was contracted with reference to the by-laws then in force, and I claim that this admits (what was true anyhow) that section 8 constituted a part of the con-

tract of loan as fixed and irrepealable as if its provisions had been incorporated in the deed of trust.

It is a matter of public knowledge that a very large majority of persons become members of these associations with the sole purpose of becoming borrowers. Before doing so they examine closely the plans for obtaining the loan and repaying the same. How much they have to pay a month is as material as the number of months they will be required to pay. Both are essential factors in determining the cost and expense of the loan. Provisions on these two important features are explained to them, copies thereof are given for closer study and as a sort of guarantee of the rights and obligations defined therein, but, lo, when the contract is consummated and the borrower is bound, the very inducing clause of the contract of loan is sought to be repealed by the directors.

Counsel argued before the chancellor that no harm was done by this repeal because the section never contemplated a reduction upon a basis of eighty-four payments unless the stock borrowed on actually matured within such a period; that this number was used simply as an "illustration," as an "estimate," and there was nothing fixed about it. I am sure that a reading of the section will lead to a different conclusion. Suppose the number was used because it was an estimate, it was an estimate made by the association, before the applicant became a borrower. To the borrower that section meant a redemption upon the basis of eighty-four payments if he desired to pay *in solido* before the maturity of the stock. Unless you give it this meaning it means nothing at all and need never have been repealed, for even before its repeal no settlement could have been made upon that basis.

Counsel further contended for his view upon the idea that, by reason of the mutuality in the affairs of building and loan associations, no fixed period can be fixed for the maturity of either the stock or the loan. This may be true as to the maturity of stock, but is not necessarily true in estimating the

number of payments required to mature a loan. It is never true where the association grants to the borrower the right to redeem his property in advance of the maturity of the stock and encourages the repayment of his loan *in solido.*

This mutuality arises from the idea of a partnership—a participation in the profits and a contribution to the losses, upon which two factors the maturity of the stock is dependent. But I beg to remind the court that where the scheme for loan embodies a plan for repayment upon a fixed basis this theory of mutuality does not apply, for, irrespective of the profits and losses, irrespective of the maturity of the stock, the amount necessary to redeem is absolutely fixed, just as if no other relation save that of creditor and debtor existed.

That this is the plan under which appellant has operated cannot be successfully denied. Section 8 of the old law prescribed for a fixed payment if made before the maturity of the stock. At the very time this was repealed section 2 of article 5 of the new law was enacted providing that borrowers in classes "B," "C" and "D" could redeem upon monthly payments for seventy-two, eighty-four and ninety-six months respectively. We are further informed that since the bringing of this suit it has also been enacted that borrowers in class "A" could redeem upon the basis of ninety-eight monthly payments, and this is true although the letter from appellant, dated February 15, 1897 (exhibit "C" to the bill), stated that the stock in class "A" would not mature for one hundred and eight months. So the court will perceive that under the plan operated by appellant every borrower could redeem upon a fixed monthly payment, even though the losses sustained by the association might delay the maturity of the stock borrowed on. If the old law is but an "estimate" by which the association is not bound, then the new provisions are equally deceptive. If the old could be repealed as to borrowers in class "A," then the new section can at any time be repealed as to borrowers who have become such upon the faith of these provisions.

As a second excuse, the answer invokes that section of the by-laws, which says: "Amendments to these by-laws may be made by the directors by majority vote." Conceding that this section confers authority to make this repeal, the question still remains, What is the effect upon borrowers who have become such before the repeal? Has it a retroactive effect? Does this section give notice that any of the material and fundamental terms of the contract of loan can be destroyed by the board of directors?

"All by-laws must be reasonable and consistent with the general principles of the laws of the land, which are to be determined by the courts when the case is properly before them. But a by-law which will disturb a vested right is not such." *Eyre* v. *Building Ass'n*, cited in 4 Am. & Eng. Enc. L., N. S., p. 1020, note 6.

Counsel argued that section 1 gives notice to all parties that the power to amend is vested in the board of directors; but notice of such a power does not give rise to the presumption that the laws created thereunder will have a retroactive effect. Surely the right granted under a law should not be divested without the consent of the interested party; and if a state law cannot disturb contractual relations, upon what principle can a private corporation claim such a power? Thompson on B. & L. Ass'n, sec. 6; Endlich on B. & L. Ass'n, sec. 137; cases cited in 4 Am. & Eng. Enc. L. (new ed.), p. 1020, note 6; cases cited in 63 Am. St. Repts., 158, note 3.

Poor, indeed, is the position which cannot attract some decision to its support, and it is possible that counsel will be able to cite a decision in their favor. It may be that English decisions support the contentions of appellant, but American authorities and text-book writers are decidedly in favor of the theory of the bill of complaint. In addition, I invoke, upon every proposition involved in this case, the well recognized principle " that, in the construction of provisions regulating the terms of voluntary payment, our courts rather favor the borrower."

Endlich, sec. 137.    But if what I have so far stated has not
found favor with this court, then I adopt the distinction
marked by Mr. Endlich in section 142 of his treatise, herein
already mentioned.    In section 141 he notes the American de-
cisions which support the view of appellee, but further on he
takes notice of several English decisions which hold a contrary
view.    In section 148 he seems anxious to reconcile the con-
flicting decisions, and states the rule to be that where the power
to amend is conferred upon directors, contracts of membership
might be amended, but that rights of borrowers cannot be im-
paired by subsequent legislation.    Whether the court will go
to this extreme or not, this rule, as announced, states the law
as favorably as appellant could possibly expect under the cir-
cumstances of this case, and by this rule I am willing to test
the strength of our cause.    Does section 8 affect borrowers or
investors?    It has nothing to do with the governmental affairs
of the association, voting of stock, apportionment of profits, or
deduction of losses, nor with the withdrawal of shares owned
by investors.    It affects borrowers alone, and them only in the
capacity of debtors of the association.

*Mc Willie & Thompson*, on the same side.

The English authorities favorable to the contention of the ap-
pellant all proceed on the idea of a supposed relation of partner-
ship existing between the members of the association.    This idea
that the members *inter sese* are to be regarded as partners is not the
established American doctrine, and the question is therefore freed
from all theories growing out of the idea that there is really no
borrowing or lending, but a mere arrangement for settling
accounts and distributing profits between partners and the like.
The English view was earnestly contended for, but repudiated
by this court in the case of *Sullivan* v. *Building Association*,
70 Miss., 94.    See, also, *Goodman* v. *Association*, 71 Miss.,
310.

We submit, then, upon authority that there is a borrowing

and lending under the contract, and that the terms upon which the debt may be satisfied under the by-laws, when the contract is entered into, vests a right in the debtor that cannot be affected by a subsequent alteration of the by-laws imposing more onerous terms. As was said of the charter of a benevolent association, in *Knights of Pythias* v. *Stein*, 75 Miss., 107–120, the by-law giving the debtor the right to settle his debt by paying all dues and interest for eighty-four months, "is as much a part of the contract as if written on its face." We fail to find in the by-laws any provision that all contracts of loan should be governed by the by-laws then in force or that might thereafter be adopted. Under the heading of "Amendment" we find that general authority is given to adopt amendments by a majority vote of the board of directors, but this affords no reason for saying that such amendments, when adopted, relate back to loans already made, and affects rights already fixed and determined. On this head, in addition to authorities appearing in brief of our associate, we would cite the following: *Betz* v. *Fulton Building & Saving Asso.* (Com. Pl.), 1 Ohio N. P., 42; 1 Bacon on Ben. Soc., sec. 187, and cases cited; Boisot on By-laws, secs. 16–19, and cases cited; 1 Morawetz on Priv. Cor., sec. 496.

In the Sullivan case, *supra*, this court held that it was error to sustain a demurrer to a bill which averred a subsequent alteration, prejudicial to complainant, of the rule in force when he became a member of the association and contracted the debt. 70 Miss., 102.

There is nothing in the amended by-law of September 7, 1894, extending its operation to loans already made, and, as the court will observe, the question is not merely one of power in the board of directors, but as well of interpretation of the by-law. Unless it is made to apply expressly to past transactions, it cannot be treated as retrospective. Bacon on Ben. Soc., sec. 187. The amendment must also be construed most favorably for the promisee. *Ib.*, sec. 179, p. 294. The prin-

ciples announced with respect to benevolent societies apply with greater force to ordinary business corporations. The cases of *Knights of the Golden Rule* v. *Ainsworth*, 71 Ala., 436, and *Knights of Pythias* v. *Knight*, 117 Ind., 489, relied on by opposing counsel, were proceedings against benevolent societies and the contracts involved therein did not bind the defendants to pay a designated sum absolutely and at all events, but, on the contrary, by their express terms, limited the beneficiary to a specific sum to be derived from assessments. The right of the beneficiary was to have the avails of assessments, there being no general fund from which a loss could be paid.

Argued orally by *L. Brame*, for appellant, and by *T. A. Mc Willie*, for appellee.

TERRAL, J., delivered the opinion of the court.

In August, 1892, Theresa P. Hilzim subscribed for twenty shares of stock in the Interstate Building & Loan Association, of Columbus, Ga. On January 21, 1893, she borrowed of the company $1,000, and to secure the repayment of said sum put in pledge her twenty shares of stock, and conveyed to a trustee certain real estate in Washington county, Miss. She also contracted to pay to the association on the third Wednesday of each month thereafter $12, as a monthly installment on said loan, until ten shares of said stock, by the installments paid on it, with its proportionate share of the profits, should reach a par value of $100. She also agreed to pay monthly, until the maturity of said loan, $5 interest thereon. It was stipulated that when the ten shares of stock to be matured by Mrs. Hilzim were brought, by the payment of the $12 monthly dues and the profits accruing to them from the concern, to the value of $100 each, the deed of trust on said real estate was to be void, and the twenty shares of stock were to be canceled; but if default was made by her in the performance of her contract of membership, provision was made for a sale of the real estate to repay said loan.

After the execution of said trust deed, and after Mrs. Hilzim had made sundry payments under said contract, she conveyed the real estate described in the trust deed to the appellee, Mrs. Hafter.   Mrs. Hafter continued the payments of the monthly dues and interest under said contract until some fifty-nine or sixty payments had been made, when she filed the bill in this case.

By the terms of the contract between Mrs. Hilzim and the association, Mrs. Hilzim was to pay monthly to the association $12 as dues and $5 as interest, and continue such monthly payments until the payments arising from the $12 monthly dues, with whatever profits might accrue to her from the venture, should mature ten shares of stock to the par value of $100 each.    At the time Mrs. Hilzim took this loan of $1,000, section eight of article five of the by-laws of the association provided that the borrowing member, after one year from the taking of the loan, and on thirty days' notice, could pay off the loan on the estimated basis that eighty-four payments of dues and interest would mature the stock and cancel the debt; but before this bill was filed, and before any notice was given by Mrs. Hafter to the association of any desire on her part to repay said loan under the provisions of said by-law, the said by-law had been repealed and another by-law adopted in its stead, which provided that the borrower could repay his loan before maturity, but, in so doing, must pay, in money, the difference between the sum loaned him and the withdrawal value of his stock.    It is to be noticed that when Mrs. Hilzim became a member of the society the by-laws provided that the board of directors, by a majority vote, could make amendments thereto. After making, as it was alleged, fifty-nine or sixty payments, Mrs. Hafter, as the assignee of the rights of Mrs. Hilzim under said contract, filed her bill, praying that she might be allowed to repay said $1,000 loan upon the basis that eighty-four payments would cancel the debt, under section eight, article five, in force at the time of the loan, but repealed at the time of

giving notice of withdrawal and the bringing of this suit.  The difference in the sums to be paid, under these by-laws, was $200, more or less, in favor of Mrs. Hafter.  The court decreed that Mrs Hafter had a right to repay the loan on the basis as provided for in section eight, article five, of the by-laws of force at the time Mrs. Hilzim took the loan, and from that decree the association appeals.

If the by-laws of the association, of force at the time of the loan, are a part of the contract, in such sense that the rights provided for by them inure as vested rights to the borrower, then the action of the chancellor is correct; but if the association might amend its by-laws so as to affect rights merely given by them, and not secured by the terms of the contract, then the learned chancellor erred.  That a benevolent association may amend its by-laws affecting rights secured by them to such member, if such amendment be made by his consent, is a rule without a dissenting expression; and it is reasonably held that the existence of a by-law, at the time a member joins the association, providing for their amendment, is a consent on his part to a change of them in the future, if made before any notice of withdrawal is given.  *Knights of Golden Rule* v. *Ainsworth*, 71 Ala., 436, 450; *Knights of Pythias* v. *Knight*, 117 Ind., 489, 496, s. c. 20 N. E., 479.

*Reversed and remanded.*