## MAYNARD *v.* INTERSTATE BUILDING AND LOAN ASSOCIATION, and *vice versa.*

1. A duly certified abstract from the book of minutes of a business corporation of this State is, upon compliance with the law embraced in the Civil Code, § 5236, admissible in evidence in lieu of the book itself.
2. When evidence is objected to as a whole on a specified ground, and some of it is not open to that objection, admitting it all is not cause for a new trial.
3. Though a member of a building and loan association, which has the power to amend its by-laws, may, at the time of subscribing for stock therein, apply for an advance upon the same, yet if the advance be not in fact made until a later period, and in the meantime the by-laws are duly changed, a contract signed by such member on the date of receiving the advance, by the terms of which the by-laws of the association are made a part thereof, must be treated as referring to the by-laws as they stood on that date; and this is so whether such member actually knew of the change or not.
4. The foregoing notes deal with all the assignments of error which sufficiently present any question for decision by this court; and it does not appear that in directing the verdict, to which exception is taken by the defendant below, any error of which he can justly complain was committed.

Argued December 4, — Decided December 19, 1900.

    Complaint. Before Judge Littlejohn. Sumter superior court. May term, 1900.

    *W. P. Wallis* and *E. A. Hawkins*, for Maynard.
    *Hooper & Crisp* and *W. A. Wimbish*, contra.

LEWIS, J.    The Interstate Building and Loan Association, a corporation organized under the laws of this State, brought suit in the superior court of Sumter county against R. L. Maynard, alleging that the defendant was indebted to petitioner in the sum of $866.05, besides future interest, instalments and dues upon certain shares of stock in the association.    This suit was upon a bond entered into by Maynard to the association on October 12, 1893, which bond contained an obligation to pay the association $2,400.    The condition of the bond was, that he was a member of the association at Americus, and owned in his own right twenty-four shares of the capital stock; and that he had, under the terms and conditions of the charter and by-laws, procured from the association a loan of $1,200 on the twenty-four shares of stock, to secure the payment of which he had also made to the association a deed of conveyance to certain real property.    Under the conditions prescribed in the by-laws, the bond recited that the loan was to be paid to the association in monthly instalments, and interest on the sum loaned was also to be paid monthly as agreed and in accordance with the by-laws, rules and regulations of the association, in direct reference to which the bond was made.    The payments of the instalments and interest were to continue until the shares of stock matured, that is, until each share of stock borrowed on, by the instalments paid on it, together with its declared proportionate profits, reached the par value of one hundred dollars.    In the bond, he obligated himself to pay to the association on the third Wednesday in each month the sum of $14.40 as a monthly instalment on the loan, and to continue to make such monthly payments until such time as each share of stock borrowed on matured, and to pay interest monthly until the loan matured.    The bond further stipulated that should he fail to pay the monthly instalments agreed upon, for a period of six months, the full amount of the loan, interest, fines, etc., should become due and payable, and the association should have the right to collect the same.    The certificate of stock specified, that R. L. Maynard was a member of the association, and was the owner and holder of twenty-four shares of stock therein; that he agreed to pay the association sixty cents monthly for each share until such share matured, or was withdrawn; and that when a loan was made to the holder of stock, the certificate he held and the number of shares it represented should be transferred to the association as col-

lateral to secure such loan, to be held until the loan and the interest should be fully paid and until the shares matured according to the by-laws. The plaintiff's petition had attached to it an itemized statement showing that the amount for which suit was brought was due by the defendant. The petition specifically set forth breaches of the bond by the defendant, and attached thereto was an itemized statement of his liability for such breaches. The defendant filed an answer, in which he denied that he was indebted to the association in the sum sued for, and claimed that the extent of his indebtedness was only $515, and that he had tendered that amount to the association, which it had refused to accept.

It appears from the testimony introduced on the trial of the case, that the defendant subscribed for twenty-four shares of stock in the association sometime in August, 1893. He testified that he then applied for a loan of $1,200 on these shares. At that time there was a by-law of the association in force which allowed 84 months as a basis of settlement for stock subscribed, it being estimated that it would mature in that time. When a member had kept up his monthly payments for a certain length of time and desired to withdraw, under this by-law of this association, the number of months for which he had paid would be deducted from the 84 months, and he would pay on the balance of the months the instalment for each month, according to the terms of the contract. It appeared from the record in this case that the defendant had made only fifty-seven payments, and these he claimed should be deducted from the eighty-four months, and that he was liable only for monthly instalments on the residue; and, according to this basis of calculation, it would have made his liability about $515. The money, however, was not advanced to him until October 12, 1893, and that was the date upon which he entered into the bond sued on in this case. As above seen, that bond contained the stipulation which made the by-laws of the association a part of the contract between the parties wherever applicable; and it was further specified that a majority of the directors had a right to change the by-laws whenever they saw proper. On the trial it appeared from the testimony that the by-law with reference to eighty-four months being a basis of settlement for the maturity of stock was, by a majority of the directors, duly repealed on September 29, 1893, before this bond was entered into. After the evidence closed, counsel

for the association moved the court to direct a verdict for the plaintiff. It seems that the plaintiff was then claiming, besides the amount specified in its petition (something over eight hundred dollars), a verdict for over eleven hundred dollars, which included future instalments and dues which had accumulated after the filing of the suit, and up to the time of trial. The court directed a verdict for the plaintiff for $839.93, with interest from the date of trial at six per cent. per annum; and further directed a finding that the indebtedness constituted a lien upon the real property described in the plaintiff's petition. Upon this ruling and direction by the court, as indicated, R. L. Maynard assigns error in his bill of exceptions, upon various grounds, the material ones of which we will presently consider. Counsel for the association likewise filed a cross-bill of exceptions, complaining that the judge did not direct the jury to find a verdict for a sufficient amount; that the plaintiff below was entitled to recover, under its proof in the case, something over eleven hundred dollars.

1. One ground alleged in the bill of exceptions was that the court erred in admitting, over objection of counsel for defendant below, a transcript from the minutes of the association, duly certified by the proper officer of the corporation. The only ground of objection urged by the plaintiff in error in his bill of exceptions is, that the transcript was a copy of the minutes of the association, and that the minutes themselves were the highest and best evidence. This objection was overruled by the judge, and the certified copy admitted in evidence. We think the ruling was clearly right, under the Civil Code, § 5236, which declares: "When any portion of the contents of the books or records of any incorporated company (located in this State) shall be material and competent evidence in any civil cause, the party desiring to use the same in evidence, upon procuring a correct transcript from said books, certified under the hands of the chief officer in charge of the office where said books may be, that said extract is a true and complete transcript of all that appears upon the books in said office relative to that subject-matter, may use said extract in evidence, in lieu of the books themselves: *Provided*, he shall have first served the opposite party with a copy of such extract, with a notice that the same will be offered in evidence, twenty days before court." We, of course, are ruling, in this connection, simply upon the objection made. The only objection

made to the introduction of this transcript as evidence was that the original book of minutes was itself the highest evidence of what it contained. The section of the code above cited clearly permits any incorporated company in this State to introduce as original testimony a transcript from its books instead of the books themselves (provided that such transcript shall be material and competent evidence) in any civil case. It is true that section of the code prescribes how and by what officer such transcript shall be certified, and what notice shall be given to the opposite party before the transcript is offered; but no objection was made to the transcript in the present case for failure to comply with any requirement of the statute.

2. Another ground of error assigned in the bill of exceptions is, that the defendant below objected to all the testimony of one Townes, because he testified to matters not in his own knowledge, but from his general knowledge of such matters, and from the records of the association. This objection was overruled by the court below, and the answers admitted. Upon examining the testimony of this witness we find much in it that was material and clearly admissible. Some of it, therefore, was not open to the objection made by counsel, and it necessarily follows from this that the court did not err in overruling the objection. In the case of *Harris & Mitchell* v. *Amoskeag Lumber Co.*, 97 *Ga.* 465, it was held: "While all of the record admitted in evidence at the instance of the defendant may not have been pertinent, yet, as much of it was both material and relevant, the court did not err in overruling a general objection to its admissibility." See authorities cited in the opinion of Justice Lumpkin on page 467. See also the case of *Walker* v. *Maddox*, 105 *Ga.* 253, where it was held: "The judgment of a trial court will not be reversed because of alleged error in admitting in evidence an affidavit objected to as a whole and containing some matter which was undoubtedly admissible, although a portion of its contents, on specific objection thereto, should have been excluded."

3. It is contended by the counsel for plaintiff in error that when he subscribed for the stock and made application for a loan of $1,200 thereon from the association, he did it on the assurance of the agent of the association that the by-law with reference to establishing eighty-four months as a basis for a settlement and ma-

turity of stock was in force; that under that by-law he was not due the association near the amount claimed; and that he would not have made the application for a loan had it not been for the existence of that provision in the by-laws of the association; that if that by-law was repealed by the association, this was done without his knowledge or consent, and that he knew nothing of its repeal until the bringing of this suit. There is no dispute that this by-law was duly repealed by a majority of the board of directors before plaintiff in error entered into the contract by the giving of the bond sued on in this case. His contract, from its terms, not only held him bound by the by-laws then in force, but by any amendment or changes that the association through its duly authorized officers might make in the same. The association was under no obligation, under its charter or by-laws, to give notice to the subscribers to its stock of such changes. As to whether they are bound by such changes is not really an open question in this court. This question was involved in the case of *Crittenden* v. *Southern Home Building & Loan Ass'n,* 111 *Ga.* 266. There it was decided that, " Where given amendments to the by-laws of such a corporation were, under its charter and constitution, allowable, they were not, as to a particular stockholder, fraudulent or void merely because made without his knowledge, or because he 'has never ratified, acquiesced in, or consented to the same.'" In the opinion delivered in that case this subject is thoroughly discussed, and the principle herein announced is clearly recognized. See particularly the quotation in that opinion from End. Bldg. Ass'ns (2d ed.), § 272. We could multiply citations on the subject, and could demonstrate that, by a decided weight of authority in this country, this principle has been recognized by the courts of last resort in the several States of the Union; but it is unnecessary to repeat these citations, since there is a direct adjudication on this subject by this court We will, however, in this connection call attention to the case of this same association against Hafter, decided by the Supreme Court of Mississippi, and reported in 24 So. Rep. 871. This identical question was made in that case, and was decided in favor of the association by that court. It was there held: "A by-law of a building and loan association permitting loans to be paid off before maturity, on the estimated basis that 84 payments of dues and interest would mature the borrower's stock and cancel the debt, may be repealed, as against

a borrower who has not sought to take advantage of it up to the time of the repeal, where at the time the loan was made the by-laws provided that they might be amended."

4. The foregoing views deal with all the assignments of error which sufficiently present any question for decision by this court; and it does not appear that in directing the verdict to which exception is taken by the defendant below there was any error whatever committed of which he can justly complain. After a careful review of the testimony, we conclude that the evidence was amply sufficient to sustain and demand at least a finding for the amount directed by the court. In fact, speaking for myself, I am inclined to think that, under a fair construction of the contract and the evidence showing liability thereon, the recovery could have been greater. A cross-bill was filed by counsel for the association, assigning error in not directing a finding for a larger amount, and I think this contention is strongly supported by the evidence. But we render no decision on this question raised by the cross-bill, because we are constrained to affirm the judgment on the main bill of exceptions; and if any error was committed against the defendant in error in the trial of the case, its remedy was by a motion for a new trial, which was not made in its behalf. By filing simply a cross-bill of exceptions its purpose evidently was to have an adjudication upon the questions thus made, in the event the judgment was reversed and a new trial granted by a decision of this court. That not being done, the cross-bill is dismissed.

*Judgment on the main bill affirmed; cross-bill dismissed. All the Justices concurring, except Little, J., who was disqualified.*