WM. HEKELNKÆMPER, *et al.*, V. THE GERMAN BUILDING AND SAVINGS ASSOCIATION, OF ATCHISON, KAS.

1. NOTE AND MORTGAGE TO BUILDING ASSOCIATION; *Foreclosure; No Error.* On October 8, 1874, H. executed a note and mortgage to the German Building and Savings Association, of which he was a member. The note was an ordinary promissory note, promising to pay $3,000 on June 1, 1877, with interest payable monthly. The mortgage conveyed, as security for the note, certain real estate and shares in the association, and stipulated for foreclosure on default in payment of principal, interest, or dues on the shares. At the time of the execution of this note and mortgage, H. received only a portion of the $3,000 in cash, the balance being the amount of the premium bid by him for the loan. The constitution of the association provided, that on default in payment of interest the directors should compel payment of principal and interest. H. defaulting in interest and dues, a suit in foreclosure was commenced. The court, ignoring the premium, rendered judgment in favor of the association on the basis of the cash received by H., and decreed foreclosure and sale of all the mortgaged property. *Held*, No error of which H. has any cause of complaint.

2. CONTRACT *Construed.* The constitution originally provided that a member whose shares were unpledged for loans might give notice of withdrawal at any time, and that from and after such notice all dues on such shares should cease. In June, 1876, all the holders of unpledged shares gave notice of withdrawal, and thereupon the section of the constitution requiring the payment of dues on shares was amended so as to provide that no dues be thereafter required from the unpledged shares. Another amendment was also then adopted, changing the manner in

which withdrawn shares were to be paid off, and instructing the directors to close the business of the association. *Held,* That these amendments in no manner changed the contract evidenced by the note and mortgage, or released either party from any obligations thereon.

### *Error from Atchison District Court.*

ACTION to foreclose a mortgage given by *Hekelnkæmper* and wife to the *German Building and Savings Association,* of Atchison, Kansas. Trial by the court, without a jury, at the November Term, 1877, of the district court, when special findings of fact were made, and a decree was entered foreclosing the mortgage. The opinion contains a sufficient statement of the facts. The defendants bring the case here for review.

*Everest & Waggener,* for plaintiffs in error.

*Mills & Wells,* and *C. T. Griffin,* for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This was an action to foreclose a mortgage given by the plaintiffs in error to the building association, defendant in error. The case was tried by the court, without a jury. Special findings of fact were made, and a decree entered foreclosing the mortgage. Of this decree plaintiffs in error complain, and allege two principal grounds of error. They insist, in the first place, that under the constitution and by-laws of the association, as they existed at the time of the execution of the mortgage, the plaintiff could not recover, or at least that the method adopted by the court in computing the amount due was wrong, and the recovery excessive; and, secondly, that the association, by certain amendments to its constitution and by-laws, had precluded itself from complying with its obligations in the premises, and was therefore in no position to complain of defendants' default.

The facts in the case are these: On October 8, 1874, the defendants executed a note and mortgage for $3,000 to the plaintiff. (In fact, three mortgages were in suit, but for convenience we shall speak of them as one.) The note read

as an ordinary promissory note, and was a promise to pay
$3,000 on the 1st of June, 1877, with interest at three-
fourths of one per cent. per month, payable monthly. The
mortgage, which in its general features was an ordinary
mortgage, recited the note, and conveyed as security therefor
certain real estate and shares of stock in the association. It
further recited that Wm. Hekelnkæmper was a member of
the association, that the mortgagors had agreed to pay cer-
tain dues and fines according to the constitution and by-laws
of the association, and contained this stipulation, that "If
said sum of money, or any interest thereon, is not paid when
the same is due and payable, or if said monthly dues and
fines shall not be paid for the period of four months, . . .
then in either of these cases *the whole of said sum embodied in
said note*, together with the interest thereon, and the dues
and fines owing to said association, shall, and by this inden-
ture do, immediately become due and payable." It would
appear, therefore, upon the face of the papers, that on default
the association was entitled to a judgment for the face of the
note and interest, and a foreclosure of the mortgage and sale
of all the property conveyed by the mortgage. But the
judgment in fact entered was for only $1,819.14. As the
association, however, is not complaining, our only inquiry is,
whether this amount is too large. We are not advised by any
computation in the findings how this exact sum was reached.
It appears that the cash received by Hekelnkæmper at the
time of the loan was $1,815.85 — the difference between that
sum and the face of the note being the premium bid for the
loan. The court seems substantially to have ignored this
premium, and given the association judgment upon the basis
of the amount of cash it had parted with. If treated as a
cash loan only, the sums paid as dues on shares are no more
to be credited as payments of interest than sums paid for
insurance on buildings on the mortgaged premises, or im-
provements thereof. They preserve or enhance the value of
the security, but are not payments on account of the loan.
Was this a wrong upon the plaintiffs in error? Upon the

face of the papers it was clearly a great wrong upon the association. And if the court went back of the papers and treated the matter as a simple loan of so much cash, it would seem as though no injustice were done the borrowers. But the contention is, that this was no loan, but a mere redemption in advance of stock in the association; that no repayment of the money received was ever contemplated, but only a payment of interest and dues until the value of the shares should equal the face of the note, when the one was to offset and cancel the other. Hence, in determining the amount due in case of a default, the money received is to be ignored and a computation made of the amount which, considering the probable duration of the association, will be necessary to place the stock at par. Or, as is said in the case of *McCahan v. Building Association*, 40 Md. 227: "The rule for ascertaining the amount proper to be recovered was to ascertain by proof the probable duration of the association; then to estimate the aggregate amount of the bi-weekly installments payable during that time, and from that sum rebate a first amount for interest, and add thereto the arrearages due after allowing for payments made to the association, and the sum thus ascertained would be the amount which the plaintiff would be entitled to recover, with interest until paid."

The following are the sections of the constitution of the association which bear upon this question. We group them here:

"Art. V, § 1. Every stockholder shall pay on each share held by him or her $2 per month, monthly dues on each share subscribed, to the secretary, or such other person or persons as may from time to time be appointed to receive the same."

"Art. XV, § 1. As soon as the directors ascertain that the value of shares in the oldest series amounts to $500, the holder of each such share shall receive the sum of $500, or have the same allowed on his indebtedness to the association."

"Art. X, § 1. Stockholders taking loans from the company shall pay interest on the same every month, at the rate of three-fourths of one per cent. per month. If the interest is allowed to remain unpaid for more than four months, the

directors shall compel payment of principal and interest." Section 2 of the same article provides, that "the member, before receiving the loan, must give to the corporation a good and sufficient security for the payment of his dues, fines and interest that may accrue on his loan during the time he may hold the same, by a mortgage upon real property, to be approved by the board of officers." Section 5 of the same article: "If any member having received a loan shall fail to pay his dues for four months, the corporation may compel payment by the sale of the mortgaged property, the proceeds to be applied, first, to the payment of all expenses of said sale, arrears of taxes, etc.; second, to pay all arrears due the corporation by such member; and the balance, if any, to be paid to the member himself or his legal representative. Such delinquent member shall then cease to be a member of the corporation." Section 6, same article: "No real estate shall be taken as security which has not the full value of the mortgage." Section 7, same article, provides that "any member of this corporation proposing real property as security for redemption-money," etc.

"ART. XIII, § 1. Any member having received a loan and desiring to repay the same shall repay to the association the money received by him, together with the loss and expenses the association may sustain in the reloan of said money in the same series."

We fail to see in these sections that which would change the character of the contract from such as it appears on the face of the papers, or would limit the right of the association to enforce a collection of this note. There may be in some a lack of precision, fullness and perspicuity, but nothing to gainsay the contract. Those sections which refer most pointedly to the contract are the clearest. Sec. 1, art. 10, which alone provides for the case of a default in the payment of interest, says that the directors shall compel payment of *principal and interest.* What language can be plainer? Sec. 5, art. 10, upon which counsel have much to say, evidently was intended to apply, not to a case of default in the payment of interest, but to a case where interest is paid and dues not paid. And while the expression, "arrears due the corporation," is not apt, yet when construed in connection with § 1 of the same article, the meaning is clear.

It is doubtless true that it was contemplated that a borrower who continued as such, and without default, to the end of the life of the association, should not be compelled to pay the principal of the note, or perhaps more correctly, that the shares which he held would then be of sufficient value to pay the note, leaving the other property in the mortgage free; but it is equally true that, pending the life of the association, it was contemplated that the note and mortgage should express the very terms of the contract between the parties, that the relations between them should be that of borrower and lender, and that the loan was an asset of the corporation which, like any other debt, could be collected when it became due. Voluntary and involuntary payments of the loan were expressly provided for. Sec. 1, art. 13, provides for the former, and requires payment of the money received by the borrower, with enough more to enable the corporation to replace the loan in the same series. Sec. 1, art. 10, provides for the latter. It would seem to contemplate payment of the face of the note, though for this case it is enough to hold that it requires payment of the money received by the borrower. All through this art. 10, as well as elsewhere in the constitution, it speaks of "loans," and the very idea of a loan carries with it that of obligation to repay. These associations may deserve all the censure counsel heap upon them. Doubtless in cases of mismanagement, whether from design or incapacity of the officers, they may do great injury to members, whether borrowers or not. Their experience in Kansas has not been happy one. They have disappointed the expectations of their promoters and supporters. But this fact will not justify courts in ignoring the stipulations of contracts, or, by construction, relieving parties from the obligations of even a hard bargain. Here the borrower is only asked to repay the money he received. The cases relied upon by counsel, from Ohio, Maryland and Georgia, (*Hagerman, et al., v. O. B. & S. Asso'n*, 25 Ohio St. 186; *McCahan v. B. Asso'n*, 40 Md. 226; *Williar v. B. B. L. & A. Asso'n*, 45 Md. 546; *O. B. & L. Asso'n v. Thompson*, 52 Ga. 427,) are not in point, for it

does not appear that the contracts or constitutions of the corporations in those cases were like those in the case at bar.

That such a corporation and such a contract as appear in this case are authorized by the statutes of this state, is apparent from the mere citation of the following sections:

"27. The accumulation and loan of funds to members, the erection of buildings, and the accumulation and loan of funds for the purchase of real property." (Gen. Stat., ch. 23, § 5; as amended, Laws 1871, ch. 65.)

"3. That premiums bid for priority of loan in building and saving or trust associations, organized under the corporation laws of this state, by the members of such associations, shall not be deemed as usury or subject to the provisions of sections 3 and 4 of an act regulating the interest of money," (Gen. Stat. 1868, ch. 51;) "*and all such premiums incorporated in the notes given by the members of the associations,* and all the fines assessed against its members in accordance with the by-laws of such associations, *may be collected by civil action before any court having jurisdiction.*" (Laws 1869, ch. 5, § 1.)

The other proposition of counsel is, that certain amendments of the constitution of defendant in error precluded a recovery. These amendments were as follows: Sec. 1, art. 5, and sec. 1, art. 15, heretofore cited, were amended so as to read:

"ART. 5, § 1. Each stockholder shall pay on each share which he or she has taken, $2 monthly, as monthly installments for each share for which he has subscribed, except that the monthly payments on shares which are not pledged to the association shall cease after June, 1876."

"ART. 15, § 1. The directors are instructed to close the business of the association, and to pay off the shares which are not pledged to the association. As often as sufficient money is in the treasury to pay one-tenth of the indebtedness, the directors shall pay ten per cent. on each share."

It is found by the court, that prior to the adoption of these amendments, which took place in June, 1876, all the non-borrowing members had given notice of withdrawal. And the constitution originally provided (art. 8, § 3), that "the dues on such shares shall cease from the time notice to withdraw the same is given." Now we fail to see how the amend-

ments in the slightest degree affected the rights of plaintiffs in error. When he (Hekelnkæmper) became a member, he knew that dues on all unpledged shares could be stopped at any time upon the election of the holders of those shares. He joined the association upon that condition. The holders of those shares made the election, and then the only parties owing dues were the borrowing members. The amendment simply provided a change in the manner of paying off the unpledged shares, and that is something which did not interest the plaintiffs in error in the least. Their obligations were not increased to the amount of a dime by the amendments. So far as the instruction to the directors to close the business of the association is concerned, it cast no new burden upon any borrower, required of him no other or different payments, and simply recognized a duty which the general withdrawal of shares seemed to impose. Plaintiffs in error may have expected that all shareholders would remain such until the close of the association, but the loan was made upon no such condition, and any member had a legal right to withdraw. The exercise of this right by any or all the nonborrowing members did not change the contract of plaintiffs in error, or release them from any of its obligations.

The judgment will be affirmed.

All the Justices concurring.