No. 21,078.

LILA B. ROYER, *Appellee,* v. THE PERKINS LOAN AND TRUST COMPANY et al., *Appellants.*

SYLLABUS BY THE COURT.

1. BUILDING AND LOAN ASSOCIATION—*Note and Mortgage of Borrowing Stockholder—Ownership.* A borrowing member of a building and loan association procured through the association a loan secured by mortgage on real estate and an assignment of her shares of stock. The note and mortgage were made payable to an individual, who was at that time secretary of the association, and the shares of stock were assigned to him. *Held,* there was sufficient evidence in this case to support a finding that at the time the action was commenced the original payee named in the note and mortgage had no interest therein and that it belonged to an association which had taken over the assets and business of the original association.

2. BUILDING AND LOAN ASSOCIATION—*Transfer of Assets—Liability of Absorbing Company to Stockholders of Former Association.* Where a building and loan association transfers all its assets to another asso-

ciation, with the approval of the state bank commissioner, the absorbing association or company becomes liable under section 2230 of the General Statutes of 1915 for all obligations to stockholders of the former association existing at the time of such consolidation; and where it notifies the borrowing shareholders of the former company that they may continue to make their payments to it upon their loans and stock, no written acceptance is required on the part of a borrowing shareholder, and the payment to and acceptance by the absorbing company of payments will constitute an acceptance.

3. SAME — *Transfer of Assets — Obligations Assumed by Transferee — Evidence.* In this case it is held there was no error in admitting in evidence the written propositions relative to the transfer of the assets of the one company to the other, including the. correspondence accompanying the same and circular letters sent out to the shareholders of the original company.

4. SAME. Certain language in the circular letters sent out to shareholders of the old company is construed not to mean that the absorbing company agreed to pay six per cent interest per annum upon all subsequent monthly payments made by borrowing shareholders of the old company.

Appeal from Jewell district court; RICHARD M. PICKLER, judge. Opinion filed November 10, 1917. Reversed.

*D. M. McCarthy,* of Mankato, *O. E. Learnard, M. A. Gorrill,* and *Henry H. Asher,* all of Lawrence, for the appellants.

*W. R. Mitchell,* and *C. Clyde Myers,* both of Mankato, for the appellee.

The opinion of the court was delivered by

PORTER, J.: This action was to recover the statutory penalty for failure of a mortgagee to enter satisfaction of a mortgage and for damages and attorney's fees, under the provisions of sections 6471 and 6473 of the General Statutes of 1915. The plaintiff recovered judgment, from which the defendant appeals.

On the first day of June, 1908, the Atlas Building and Loan Association, hereinafter called the Atlas company, engaged in business at Lawrence, made an ordinary building loan of $1,000 to Lila B. Royer, the plaintiff, taking her note payable to the order of F. M. Perkins, secured by mortgage on residence property in Jewell county. F. M. Perkins was secretary of the company. As further security for the loan, and to set forth the

manner in which it and the interest thereon should be paid, she signed an instrument or indenture agreeing to subscribe for twenty shares of stock in the company, and assigned the shares to F. M. Perkins. By the agreement she was to pay for the stock in dues of $12, payable on the first day of every month until the shares should mature or the contract should otherwise be fully completed or terminated. In lieu of interest to accrue on the principal of the loan she agreed to pay the sum of $8 on the first day of each month until the shares of stock should mature, making the sum of $20 due on the first day of each month until the contract was completed. The mortgagee or his assigns might declare the principal debt immediately due and payable in case of any default in the payment of any sum covenanted to be paid, and might foreclose the mortgage, sell the real estate, and have the right to sell the shares at public or private sale and surrender them to the association for cancellation and apply the funds so arising to satisfy all sums due on the contract. It was agreed that the note, mortgage and stock agreement should form one complete contract, to be construed together to determine the intention of the parties.

On the first of November, 1910, the Perkins Loan and Trust Company, hereinafter referred to as the Perkins company, with its headquarters also at Lawrence, took over all the assets and business of the Atlas company, with the consent and approval of the stockholders of the Atlas company, as provided in section 2230 of the General Statutes of 1915, and with the consent and approval of the bank commissioner.

The petition was filed February 4, 1915. It made no reference to the agreement that the plaintiff should take out shares of stock and make payments thereon, but it alleged that she had paid the sum of $300 more than was justly due and owing to the Perkins company and F. M. Perkins, and alleged their failure to cancel and return the promissory note and enter satisfaction of the mortgage. The petition was drawn as though it were an action by a mortgagor against the mortgagee for failure to release an ordinary real-estate mortgage; it alleged that $250 was a reasonable attorney's fee, that plaintiff had suffered other damages to the extent of $250, and asked '$60, the reasonable value of an abstract of title,

which it alleged the defendants had failed to return. The petition asked for a judgment in the sum of $900, for costs, and that the cloud on plaintiff's title to the real estate might be removed.

The answer admitted that the Perkins company had taken over and assumed the liabilities of the Atlas company, and admitted the execution of the note and mortgage. It set up a copy of the note, the mortgage and indenture or stock agreement, and alleged that no part of the principal of the note had ever been paid; that the interest thereon had been in default since February 1, 1914. The answer also pleaded the one year's statute of limitations for the recovery of a penalty or forfeiture.

F. M. Perkins filed a separate answer and cross petition, claiming to be the owner in his personal right of the note, mortgage and indenture, setting out copies of all of them, and alleging that the plaintiff had made 68 monthly payments of $12 each upon the shares of stock, that is, payments from the first day of June, 1908, up to and including January, 1914, and amounting to $816, but no other or further payments had ever been made on the shares of stock; that these were not sufficient to mature the shares which had been delinquent since February 1, 1914. It alleged that the plaintiff made the regular monthly payments of interest to F. M. Perkins up to and including the month of January, 1914, and that no other or further payments of interest have ever been made on the note and mortgage. The cross petition then set up a claim for the foreclosure of the mortgage because of the defaults in the payment of interest, and because of a provision in the mortgage and indenture that at the option of the mortgagee he might declare the principal sum due for a default of any of the covenants or payments. The defendant, Perkins, further alleged that there was $1,013 due on the loan, with interest at the rate of ten per cent on all defaults, and asked to have the mortgage foreclosed. He alleged that he had never had anything to do with the twenty shares of stock, except to hold them in pledge as security for the loan, and brought the shares into court and offered to surrender them to the plaintiff as soon as the full amount of the indebtedness due him was paid.

The case was tried by the court without a jury. The court made the following findings:

"That the defendant F. M. Perkins has no interest in or claim to the note and mortgage set out in his answer filed herein.

"That in the computation the plaintiff should be credited with the sum of $360.00, being the total of the different amounts of $12.00 paid each month from the time of making the contract up to November 10th, 1910; and that she should be credited with the total of the amounts of the monthly payment of $20.00 thereafter paid in the sum of $760.00; that she should be credited with the dividends in the sum of $19.30; that she should be credited with interest on the amounts of the $20.00 payments in the total sum of $74.10; that she should receive credit for the interest on the $360.00 at the rate of six per cent per annum from November 10th, 1910, to January 1st, 1914; in the sum of $67.80, making a total sum of $1,281.20.

"That in the computation the defendant should be credited with the sum of $1,000.00, the amount of the note and mortgage, and interest on that sum from November 10th, 1910, to January 1st, 1914, at the rate of six per cent per annum, the amount expressed in the note, in the total sum of $188.33; and the court finds that the $8.00 payments which were made by the plaintiff each month from the time of the making of the contract up to and including November 1st, 1910, were paid in lieu of any interest on said note; that the total amount with which the defendant should be credited in the computation is the sum of $1,188.33, leaving a balance in favor of the plaintiff at the time she made the last payment in the sum of $92.90; that the plaintiff is entitled to recover $100.00, the penalty for the noncancellation of the mortgage; $125.00 for attorney's fees; $25.00 for expense; $20.00 for time spent, making a total for which the plaintiff should have judgment of $362.90, together with interest at the rate of six per cent per annum, and that defendant pay the costs of this action; that said note and mortgage including the indenture mentioned in said mortgage should be and they are hereby ordered canceled, and that the defendant be required to return to the plaintiff the abstract of title to the premises described in said mortgage and to deposit for cancellation in this court the note and mortgage securing the same, together with the indenture therein mentioned, said instruments to be marked canceled by the clerk of this court."

Upon these findings judgment was entered.

1. It is said the court erred in refusing to sustain a demurrer to the evidence because the note and mortgage and indenture were contracts made strictly with F. M. Perkins, and in this connection it is said that there was no testimony of any kind tending to show that F. M. Perkins was not and is not the owner of the note and mortgage. We can not agree with this contention. It seems to us there was abundant evidence

to sustain the court's finding that the contract was made with the Atlas company and taken over by the Perkins company and that F. M. Perkins has no interest in or claim to the note and mortgage. The written proposition made by the Perkins company for the purchase of the entire assets of every kind and character of the Atlas company recites that the Perkins company

"guarantees to carry out the loan contracts of The Atlas Building and Loan Association in the following manner, to wit: That the borrower shall be given credit on his loan with the amount of money paid in on the stock pledged to secure the same, and said borrower may, in continuance of said loan pay to said Perkins Loan and Trust Company an amount equal to the payments which he was to make to the Atlas Building and Loan Association. And when the amount which the borrower has already paid to the Atlas Building and Loan Association and the amount which he shall hereafter pay to the Perkins Loan and Trust Company, shall equal the amount of his loan and interest, his note shall be surrendered and his mortgage canceled of record by said company. All of said payments shall be applied, first, to the payment of interest on said loan; second, the remainder or surplus to the payment of principal until the same shall have been paid out. Provided, that if the borrower wishes to cancel his loan and have the mortgage released, he may do so by complying with the terms of the contract made with the Atlas Building and Loan Association at the time said loan was obtained.

"The said Perkins Loan and Trust Company guarantees to carry out the contract between investment stockholders and The Atlas Building and Loan Association in the following manner, that is to say: That the member shall be credited with the amount of money paid on his shares on the first day of November, 1910, and he shall thereafter make his monthly payments to said Perkins Loan and Trust Company instead of paying the same to The Atlas Building and Loan Association; but with the foregoing exceptions; the original contract between the stockholder and The Atlas Building and Loan Association shall prevail and all the terms thereof continue in force, guaranteed, however, by The Perkins Loan and Trust Company. Provided, that no stockholder shall receive under this agreement, a less amount than he has actually paid to The Atlas Building and Loan Association, which amount shall draw interest at the rate of six per cent per annum from the first day of November, 1910. If, however, the stockholder wishes to withdraw before maturity, he may do so subject to all of the terms of his original contract, and the by-laws of the said Atlas Building and Loan Association in force at the time his certificate of stock was issued."

This proposition, afterwards approved by the state bank commissioner and accepted by the Atlas company, was the proposition made by the Perkins company to each of the borrowers and shareholders of the old company after it acquired

the business and assets of the Atlas company. It will be observed that the loan contracts are spoken of as having been made with the Atlas company, and it is expressly provided that the borrower may in continuance of the loan pay to the Perkins company an amount equal to the payments he was to make to the Atlas company. If the contract embraced in the note, mortgage and indenture was made with F. M. Perkins alone, for what reason did the Perkins company take the trouble to send in writing a notice to the plaintiff that it had taken over the business of the old company? Moreover, the Perkins company continued to accept payments made by the plaintiff on the so-called Perkins loan and made for a year or two after they had taken over the assets of the old company.

In addition, there was evidence showing that Perkins, the payee of the note and mortgage, had indorsed the note in blank "without recourse," and that the note was kept in the vaults of the defendant company. The fact that they were kept with papers known as the Perkins papers was of no importance. It also appears that at the same time the note was indorsed by Perkins he executed and acknowledged an assignment of the mortgage, and that this assignment has been placed on record in Jewell county. For several years after the transfer of the assets of the old company to the new, the Perkins company continued to correspond with the plaintiff about the business and to insist that she should make payments of interest on the note. There is no merit in this defense.

2. Another defense is urged which possesses even less merit. On November 1, 1910, the Perkins company sent out a formal notice in writing to the stockholders of the Atlas company, notifying the latter of the taking over of the business of the old company, and that the members of the Atlas company might continue their payments to the new company the same as they had been theretofore making, and would be given credit for what had been paid to the old company, until the contracts with the old company were matured or canceled. The plaintiff never formally notified the Perkins company of her acceptance of this transfer by signing and returning the printed blank sent to her. It appears that she at once began making her payments to the Perkins company, which that

company accepted and retained; and yet it is contended that in the absence of evidence showing her written acceptance of the proposition, no contract rights were created between her and the Perkins company, and that she is therefore a stranger to that company. In the first place, she accepted and adopted the proposition by making subsequent payments to the defendant company on her original contract. Further, we think that section 2230 of the General Statutes of 1915, which provides for the consolidation of two or more building and loan associations, is controlling. This statute authorizes the consolidation of such organizations; "Provided, that the reorganized corporation shall be liable for all obligations to stockholders of the corporation existing prior to such consolidation." The statute required the Perkins company to assume all obligations to the stockholders of the Atlas company. It was permitted by the bank commissioner to absorb all the assets of the Atlas company upon the representation that they would carry out and assume all the obligations of the old company. This, together with plaintiff's acceptance of the proposition by making subsequent payments to the Perkins company, and their retention of these payments, forecloses the defendant company from now claiming that it is not bound thereby.

3. There was no error in admitting, over the objection of defendants, and in considering the circular containing the proposition and acceptance relative to the transfer of the assets of the Atlas company, nor in admitting the correspondence accompanying the same, although by its express terms it made a distinct and definite offer and was accompanied by a blank form upon which the shareholder might signify an acceptance of the offer. It was properly admitted in evidence, together with evidence showing that the plaintiff had, in fact, accepted the offer, although she failed to fill out the blank form of acceptance. It is urged that it could not in any sense bind F. M. Perkins, who was not a party to it. We have already said the court was fully justified in finding that F. M. Perkins never had and has no interest in the note and mortgage.

4. We come now to a more serious contention, and that is that the court erred in the computation of payments and interest, and in finding that there was any amount due from the

Royer v. Trust Co.

defendant to the plaintiff. The court gave the defendant credit for $1,000, the amount of the loan, and interest on that sum from November 10, 1910, to January 1, 1914, at 6 per cent; finding at the same time that plaintiff's $8 payments made each month previous to that time were paid in lieu of any interest on the note, and that the plaintiff had more than paid the loan and there was a balance due her in the sum of $92.90. In arriving at this computation the court credited her with 6 per cent interest on all the $20 payments (which aggregated $760) made after November 10, 1910. We do not understand how the court arrived at this computation, unless by placing what we regard as an erroneous construction on some language contained in a letter accompanying the circular signed by E. O. Perkins, who was at that time secretary of the Perkins company. In the letter occurs this language:

"It is provided that the members of the Association may continue their payments the same as made monthly heretofore to the Atlas to the new Trust Company, and shall be given credit for what has been paid into the Association, and shall receive interest upon said credit, together with the subsequent monthly payments to the Trust Company at the rate of 6% per annum until said contracts are matured or cancelled."

The court apparently construed this as stating the understanding of the parties that the plaintiff was entitled to receive interest upon the forthcoming monthly payments at 6 per cent. We think the language should be construed in connection with the plan proposed by the Perkins company to the Atlas company, and approved by the bank commissioner, by which the former acquired the assets and assumed the liabilities of the old company. The contract which the plaintiff had with the old company was the ordinary building-and-loan association contract, by which a borrower executes his note and mortgage, drawing interest according to the terms of the note and mortgage at 6 per cent, and agreeing at the same time to take certain shares in the association and to make monthly payments thereon until the stock is matured and the principal of the loan thereby paid. The court could not make a new contract for the plaintiff. All she can claim, by virtue of the transfer of the assets of the old company to the new, is the right to have her contract completed in the same way it would have been under the agreement with the Atlas company. We need not consider the contention that the construc-

tion placed upon it by the trial court makes it an offer on the part of the secretary which would have been *ultra vires* and unauthorized. The language of this part of the letter is conceded to be obscure. The ambiguity is easily disposed of, however, by reading the words "at the rate of 6% per annum" where we think they belong. The statement of the proposition would then read: "And shall be given credit for what has been paid into the association, and shall receive interest upon said credit at the rate of 6% per annum, together with subsequent monthly payments until the contracts are matured or canceled."

In *Hekelnkæmper v. Building Association*, 22 Kan. 549, which was a foreclosure suit brought by a building and loan association upon a note and mortgage for $3,000, the mortgagor, a member of the association, agreed to pay certain dues and fines according to the by-laws of the association, and in case of his failure to keep up the payments when due the whole of the sum, together with interest, and the dues and fines, were by the mortgage to become immediately due and payable. He appealed from a judgment of foreclosure in which the court found there was only $1,815.85 due, the difference between that sum and the face of the note being the premium which he bid for the loan. In the opinion affirming the judgment it was held that on the face of the papers, that is, the contract between the association and the borrower, the judgment "was clearly a great wrong upon the association"; but inasmuch as there was no cross appeal, the judgment would not be disturbed. In the opinion it was said:

"The court seems substantially to have ignored this premium, and given the association judgment upon the basis of the amount of cash it had parted with. If treated as a cash loan only, the sums paid as dues on shares are no more to be credited as payments of interest than sums paid for insurance on buildings on the mortgaged premises, or improvements thereof. They preserve or enhance the value of the security, but are not payments on account of the loan." (p. 551.)

It was further said in the opinion:

"It is doubtless true that it was contemplated that a borrower, who continued as such, and without default, to the end of the life of the association, should not be compelled to pay the principal of the note, or, perhaps more correctly, that the shares which he held would then be of sufficient value to pay the note, leaving the other property in the mortgage

free; but it is equally true that, pending the life of the association, it was contemplated that the note and mortgage should express the very terms of the contract between the parties, that the relations between them should be that of borrower and lender, and that the loan was an asset of the corporation which, like any other debt, could be collected when it became due. Voluntary and involuntary payments of the loan were expressly provided for." (p. 554.)

There is a conflict in the authorities on the question of how payments shall be credited.

"Some authorities hold that all payments made by a borrowing shareholder to the society should be credited on the loan. Others are to the effect that payments on stock are not *ipso facto* payments on the loan and do not operate of themselves to extinguish it *pro tanto*." (6 Cyc. 153.)

Among the cases cited as holding that payments on stock do not operate of themselves to extinguish the loan, is *Hekelnkæmper v. Building Association,* supra.

Under the title "Payment when association is solvent," it is said in 4 R. C. L., page 376:

"The cases seem to agree that whatever application may ultimately be made of the payments they are not in the first instance and of necessity to be treated as a reduction of the debt. While this is true as a general proposition, still it must not be forgotten that the object of stock payments is ultimately to satisfy the stock, and that in the case of a borrower such payments operate finally to satisfy the debt. So, when such stock has matured, the debt of the borrowing stockholder is paid; he is then entitled to his securities, and the association has no right to bring an action against him for the amount of his loan. *But a borrower can not at the same time treat his payments as payments on stock and payments on loans,* although his payments on stock, if persevered in and if the association is successfully wound up, may ultimately pay off his loans. *He can not make his payments perform a double office at one and the same time. He can not pay two debts with the same money,* and if when he is sued for the loan he chooses to abandon the stock and insist upon the payments which he has made upon it being applied to his loan, he has a right to do so, but he has no right to claim that the dues paid upon the stock shall be credited to him against the mortgage as of the date when these payments were made, precisely as if he had never owned any stock and had never incurred any obligation for the unpaid installments due upon it." [Italics ours.]

The plaintiff was entitled to credit for 6 per cent interest on her loan represented by $8 of the monthly payments, but she was not entitled to credit for 6 per cent interest on the balance of the $20 payments, because this $12 went to mature her stock. The plaintiff and the defendant are both bound by the

original contract with the Atlas company, and until the plaintiff has fully completed her payments on her shares of stock, or in some other manner paid the indebtedness represented by the note and mortgage, she is not entitled to have the mortgage released; and it necessarily follows that the judgment allowing her the $100 penalty and attorney's fees was erroneous. The court had no right to go back of the papers comprising the original contract, and to make a new contract for the plaintiff.

The contract between the Atlas and the Perkins companies, construed as it must be with the provisions of the statute authorizing such contracts, bound the Perkins company to assume all the obligations of the Atlas company, including contracts with its borrowing shareholders who might be satisfied with the new arrangement and be willing to accept the proposition made by the Perkins company. While some of the language in the literature sent out to the borrowing shareholders of the Atlas company may seem somewhat ambiguous, we think the general purpose clearly appears, and that the plaintiff is entitled to have her original contract carried out just as it would have been had the Atlas company continued in business. Her contract and her obligations are not changed in the least. In the brief of the plaintiff there is a computation showing that while the note and mortgage provide for 6 per cent interest, she would be compelled to pay 9.6 per cent on her loan if the defendant's contention is correct. But this furnishes no reason why she should not be bound by her original agreement. It is the usual thing where a loan is made by a building and loan association for the note and mortgage to provide for 6 per cent interest, and yet the whole scheme by which the money is borrowed and loaned contemplates the payment of a much higher rate. Were it not for this fact such associations would not be established.

The judgment will be reversed and the cause remanded for further proceedings in accordance with the views herein expressed.