## E. HESS MALTING CO.
### v.
## NATHANIEL H. WARREN ET AL.

1. BOARD OF TRADE—RULES.—The rules of the Board of Trade, as between its members, have the force and effect of existing laws, and so far as applicable enter into and form a part of their board contracts.

2. CHANGE IN RULE BETWEEN TIME OF CONTRACT AND DELIVERY.— Where a party on the Board of Trade bought new "No. 2" barley to be delivered in September, and between the time of making the contract and the date of the delivery of the grain the board of commissioners changed the character of the description of No. 2 barley, and the barley tendered was of the latter description. *Held,* that the buyer was not obliged to accept it; the contract was governed by the rule in force at the time it was made.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH GARY, Judge, presiding. Opinion filed January 6, 1885.

Mr. Francis Lackner, Mr. Sidney C. Eastman and Mr. Corydon Beckwith, for appellant; cited Benjamin on Sales, 600; Cooley on Constitutional Limitations, 348.

Mr. Daniel L. Shorey, for appellees; cited McPherson v. Gale, 40 Ill. 368.

Wilson, P. J.   The present case lies within narrow limits. By the agreed statement of facts it appears that on July 27, 1883, appellee sold to appellant 5,000 bushels of new, " No. 2 barley," at 76½ cents per bushel, to be delivered at seller's option during the month of September following, and to be paid for on delivery.   N. H. Warren, who acted in behalf of appellees, and E. Hess, who acted for appellant, were members of the board of trade of the city of Chicago, and said contract was entered into at said board of trade and was made subject to the rules and customs thereof.

At the time the contract was made the board of trade and warehouse commissioners had adopted a rule, which was then in force, for establishing a standard of grades for the inspection of barley as follows: " No. 2 barley shall be sound, of healthy color, bright or but slightly stained, not plump enough for No. 1, reasonably clean, and reasonably free from other grain." On September 1, 1883, subsequently to the making said contract of sale, the board of railroad and warehouse commissioners adopted the following rule, namely: " No. 2 barley shall be sound, of healthy color, not plump enough for No. 1, and reasonably free from other grain," omitting the words " bright or but slightly stained," which said last rule was in force at the time of the tender and refusal of the barley as hereinafter stated.

On September 13, 1883, appellees tendered to appellant, duly indorsed, warehouse receipts for five thousand bushels of new, No. 2 barley, of the crop of 1883, which appellants refused to accept and pay said sum of 76½ cents per bushel therefor, the market price at that time being 59½ cents per bushel.   It is stipulated that the barley tendered was not the quality required by the rules of the board of railroad and

warehouse commissioners in force at the time the contract was made, but was of the quality provided for by the rules of said board in force at the time the tender was made.

The only question to be determined is whether its barley called for by the contract was to answer the description provided for by the rule of the board of trade in force at the time the contract was made, or of the rule as subsequently adopted on September first.

The rules of the board of trade, as between the members, have the force and effect of existing laws, and, so far as applicable, enter into and form a part of their board contracts. By the act in relation to railroads and warehouses, chapter 114, Rev. Stat., Sec. 147, the board of railroad and warehouse commissioners are required to establish a proper number and standard of grades for the inspection of grain, and may change the same from time to time upon giving public notice, as prescribed by the act. In many cases the rules and customs of the board of trade give meaning and effect to contracts which would otherwise be meaningless, and void for uncertainty. The words " number two " barley would of themselves furnish no idea as to quality, and they only become significant when supplemented by a definition found in a rule of the board. As the words " number two " can only be interpreted by resorting to a rule of the board defining " number two," the contract must be construed as though such rule were incorporated in it.

Since in every contract of sale there must be a thing sold which forms the subject of the contract, and since, in the absence of some standard or rule existing at the time of making the contract, the words " number two " would be descriptive of nothing, it would seem to follow that unless the rule of the board of trade in force at the time of making the contract in question is to be applied to it, the contract was void for uncertainty. It fails to describe the thing sold. The parties could have provided, had they so desired, that the inspection of the barley should be made under any rule that might be thereafter established. This they did not do, and we can not assume that such was their intention, in the absence of proof.

It does not appear that, at the time of making the contract, any notice of a contemplated change in the rule had been given, nor that any change was contemplated. It is true the barley contracted for was to be of the new crop of 1883, but the only effect of this provision in the contract was to exclude the right on the one hand to tender, and on the other to demand, barley of any other year. It raises no implication of an agreement that the inspection might be made under some new rule. The parties can not be presumed to have anticipated a change in the rule.

It is contended by the learned counsel for appellee that appellant had no right to assume that the rule in force at the time the contract was made would continue in force while the contract was operating, and an analogy is sought to be derived from the law applicable to the fulfillment of a contract by the payment of money. We are unable to perceive the force of the supposed analogy. Money is made by law the standard of value. It can not in any proper legal sense be said to be cheap or dear, though its purchasing power may be greater or less according to the abundance or scarcity of the commodity to be purchased, and hence, in common parlance, it is sometimes said to be cheap or dear. If one sells his house for a hundred dollars, to be paid at a future time, it is in effect as if he were to buy a hundred dollars for future delivery. He knows just what he has bought, and must accept it whether money is plentiful or scarce. But here, if the construction of the contract, as claimed by appellee, be correct, it is wholly uncertain what appellee bought. It depends upon future contingencies not provided for in the contract.

The question in every case of purchase and sale is, what was the thing sold? what did the purchaser buy? When that is ascertained, then, as respects the subject-matter of the contract, the controversy is at an end. Here appellant bought "No. 2" barley, deliverable in the month of September. At the time of the purchase No. 2 barley, interpreted by the then existing rule of the board of trade, had a definite meaning, namely, barley which, in addition to other specified qualities, was "bright, or but slightly stained."

We are of opinion that the contract was governed by this rule. The barley tendered was not of this quality, and appellant was therefore not obliged to accept it.

The judgment against appellant in the court below must be reversed and the cause remanded.

Reversed and remanded.