(No. 13185.—Cause transferred.)

W. A. Thomson, Appellant, *vs.* Alexander W. Thomson *et al.* Appellees.

*Opinion filed June 16, 1920.*

1. Constitutional law—*when prohibition of laws impairing obligation of contracts does not apply.* The constitutional provision that no law shall be made impairing the obligation of contracts is directed against the legislative department of the government and is not applicable to decisions of the courts in the construction of contracts or the application of general principles of law to contract relations or obligations.

2. Same—*what enactments are subject to prohibition of laws impairing obligation of contracts.* To be within the constitutional prohibition of laws impairing the obligation of contracts it is not essential that the enactment shall be a statute of the legislature or a constitutional provision adopted by the people but the prohibition reaches every form in which the legislative power of the State is exerted, whether by constitution, constitutional amendment, enactment of the legislature, ordinance of a municipal corporation or a regulation of some other instrumentality of the State exercising delegated legislative authority.

3. Same—*what enactment may be regarded as law.* Any enactment of a governmental agency to which the force of law is given by the State may be regarded as a law within the territory in which it is so enforced.

4. Brokers—*Chicago Board of Trade has no political or governmental power.* Although the Chicago Board of Trade is in-

corporated under an act of the General Assembly it is merely a voluntary organization with the ordinary powers and privileges of private corporations and has no political, governmental or legislative power.

5. SAME—*members of Chicago Board of Trade are subject to its by-laws.* Persons who become members of the Chicago Board of Trade voluntarily submit themselves to the operation of all laws enacted for the government of the corporation and agree to be bound by them so far as within the corporate authority.

6. CORPORATIONS—*what is included in grant of power to corporation to adopt by-laws.* The grant of power to adopt by-laws, rules and regulations for the government of a private corporation and the management of its business is no more than a recognition of the inherent and implied power which is a necessary and inseparable incident of its existence.

7. APPEALS AND ERRORS—*whether resolution of Chicago Board of Trade impairs obligation of contracts is not constitutional question.* Whether a resolution of the Chicago Board of Trade impairs the obligation of a contract for future delivery of grain is not a constitutional question authorizing a direct appeal to the Supreme Court, as the constitutional prohibition does not apply to such a resolution, and its validity depends merely upon the power of the board of directors, under the general principles of law in relation to contracts, to adopt it.

APPEAL from the Municipal Court of Chicago; the Hon. CHARLES A. WILLIAMS, Judge, presiding.

KEITH L. BULLITT, and KING, BROWER & HURLBUT, for appellant.

HENRY S. ROBBINS, (SILAS H. STRAWN, and WALTER H. JACOBS, of counsel,) for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

This is an appeal by the plaintiff from a judgment in favor of the defendants, rendered in the municipal court of Chicago upon a directed verdict.

It is claimed that the judgment is in violation of sections 8 and 17 of article 13 of the constitution of 1848, sections 2 and 14 of article 2 of the constitution of 1870, and section 10 of article 1 of the constitution of the United

States, the ground of complaint being that the court gave the effect of law to a resolution of the board of directors of the Chicago Board of Trade adopted July 5, 1917, and applied it to modify existing contracts between the plaintiff and the defendants, contrary to the constitutional prohibition against the passage of any law impairing the obligation of contracts.

The appellees are brokers in Chicago and members of the Chicago Board of Trade. The appellant, a grain dealer in Louisville, Kentucky, employed appellees on May 23, 1917, to buy for him 10,000 bushels of No. 2 corn for July delivery at $1.57⅛ a bushel, and on June 12 to buy 10,000 bushels more at $1.58 a bushel. The appellees made both purchases, the purchase price for the two lots amounting to $31,512.50, and on July 31, none of the corn having been delivered, the appellant tendered that amount to the appellees and demanded delivery of the corn. The appellees refused to deliver the corn, having previously settled the appellant's contracts with the sellers on the basis of $1.65 a bushel, the price fixed by a committee under the authority of the board of trade by virtue of the resolution of July 5, 1917, mentioned hereafter. They informed appellant that Clement, Curtis & Co. were the sellers, and thereupon the appellant tendered the purchase price to Clement, Curtis & Co. and demanded delivery of them, but they, too, refused. The market price of the corn on that day was $2.36 a bushel. Clement, Curtis & Co. were not the original sellers of the corn but under the rules of the board of trade they were substituted for the sellers and the defendants became guarantors of the ultimate fulfillment of the original contracts. The contracts were made in accordance with and subject to the rules, regulations and customs of the board of trade and the rules, regulations and requirements of its board of directors and all amendments that are made thereto. On July 5, 1917, the board of directors of the board of trade adopted the following resolution:

"WHEREAS, by reason of the state of war which now exists, it becomes the patriotic duty of all to second the efforts of our government to prevent undue price increase in food products; now, therefore,

"*Be it resolved,* that after the 5th day of July, 1917, all trading by members of this exchange in corn for delivery by grade alone in Chicago in the month of July, either for immediate or for future delivery, shall cease, and any member so trading after said day shall be deemed to have committed a grave offense against the good name of this association.

"*Be it further resolved,* that the president shall appoint a committee of three from the membership at large, to be approved by this board, who shall proceed at once to determine the true commercial value of the contract grades of July corn in Chicago on the 5th day of July, 1917, and that the price, when so established by said committee, shall be the basis upon which shall be settled all contracts for July delivery open at the close of business on the 5th day of July, 1917, except such open contracts as shall be performed for delivery during the month of July or shall be settled by the agreement of the parties. Every seller not notifying his purchaser in writing before 1:15 o'clock P. M., July 9, 1917, of his intention to settle his July, 1917, contracts upon the basis of the price thus fixed shall be deemed to have elected to deliver the property, and in case of his failure to deliver, settlement shall be made at the price fixed plus the penalty provided in rule 23, and to this extent the resolution of the board of directors of June 13, 1917, is hereby modified."

The committee appointed under this resolution fixed the value of July corn at $1.65 a bushel, and on July 9 Clement, Curtis & Co. notified the appellees of their intention to settle the appellant's contracts for July corn upon the basis of that price, and the appellees, in spite of the appellant's instructions to the contrary, made the settlement, remitting the profits to the appellant's Louisville agents.

The appellees contend that the resolution of July 5 was a requirement of the board of directors of the board of trade subject to which the contract was made, while appellant contends that if applied to his existing contracts it was an unconstitutional impairment of the obligation of them.

The appellees moved to transfer the cause to the Appellate Court for the First District because no question of

the construction of the constitution is involved, and the motion was taken with the case. It must be allowed. The constitutional provisions on which the appellant relies prohibit the passage of any law impairing the obligation of contracts, and the appellees contend that while not only statutes but the ordinances of municipal corporations are included within the meaning of the law, the term has no application to by-laws of a private corporation. The board of trade of the city of Chicago was incorporated by special act of the legislature in 1859, while the constitution of 1848 was in force, which contained the same provision as to the passage of laws impairing the obligation of contracts as the constitution of 1870. There is no doubt that the application of the resolution of July 5 to appellant's contracts would impair the obligation of them. Before the resolution the seller was bound to deliver the corn during the month of July, and if he did not he was bound to pay damages, if the price went up, to the extent of the excess of the market price over the contract price. Under the resolution he would not be bound to deliver the corn, and the measure of damages he would be required to pay was the difference between the contract price and $1.65 a bushel,—the price fixed by the resolution.

Is the resolution a law within the meaning of the constitutional declaration that no law impairing the obligation of contracts shall ever be made? This prohibition is directed against the law-making power,—the legislative department of the government. It is not applicable to the decisions of the courts in the construction of contracts or the application of general principles of law to contract relations or obligations. "The prohibition is aimed at the legislative power of the State and not at the decisions of its courts or the acts of administrative or executive boards or officers or the doings of corporations or individuals." (*New Orleans Waterworks Co.* v. *Louisiana Sugar Refining Co.* 125 U. S. 18.) Though the prohibition is against the making

of a law, it is not essential that the enactment, to be within the prohibition of the constitution, shall be a statute enacted by the legislature or a constitutional provision adopted by the people. Any enactment of a governmental agency to which the force of law is given by the State may be regarded as a law within the territory in which it is so enforced. (*Williams* v. *Bruffy*, 96 U. S. 176.) So an act of the Confederate Congress sequestrating the property and credits, within States in rebellion, of loyal citizens of the United States, which was enforced by the State of Virginia as a valid law, was held to be an infringement of the prohibition of the Federal constitution against any State passing any law impairing the obligation of contracts. The prohibition reaches every form in which the legislative power of the State is exerted, whether constitution, constitutional amendment, enactment of the legislature, ordinance of a municipal corporation or a regulation of some other instrumentality of the State exercising delegated legislative authority. (*Ross* v. *Oregon*, 227 U. S. 150.) In *Grand Trunk Western Railway Co.* v. *Railroad Com.* 221 U. S. 400, an order of the railroad commission of Indiana for the installation of an interlocking plant was held to be a legislative act by an instrumentality of the State exercising delegated legislative authority, and so a law of the State within the meaning of the constitutional provision; and the same view was taken of a resolution of a board of county commissioners terminating a grant of the right to locate, construct, maintain and operate an electric railroad along a State highway without specifying any limit of time. (*Northern Ohio Traction Co.* v. *State of Ohio*, 245 U. S. 574.) These were all cases of action taken by some governmental instrumentality to which some part of the legislative power had been delegated by an act of the legislature. No political or governmental power has been delegated to the Chicago Board of Trade. The voluntary association of individuals composing that body at the time its charter was granted by

the legislature was incorporated with the ordinary powers and privileges of private corporations, with authority to make such rules, regulations and by-laws from time to time as they might think proper or necessary for the government of the corporation not contrary to the laws of the land, and to establish such rules, regulations and by-laws for the management of their business and the mode in which it should be transacted as they might think proper. There was no grant of any legislative power. The board of trade is merely a voluntary organization although incorporated under an act of the General Assembly. (*People* v. *Board of Trade*, 80 Ill. 134.) The grant of the power to adopt by-laws, rules and regulations for the government of the corporation and the management of its business is no more than a recognition of the inherent and implied power which is a necessary and inseparable incident of its existence. (1 Blackstone's Com. 476; 2 Kent's Com. 278; *People* v. *Live Stock Exchange*, 170 Ill. 556.) The persons becoming members of the corporation have voluntarily submitted themselves to the operation of all laws enacted for its government and agreed to be bound by them so far as within the corporate authority. (*Board of Trade* v. *Nelson*, 162 Ill. 431.) Whether the contracts in question, made by members of the corporation in their own names but really for the appellant, were affected by the resolution of the board of directors is not a question of construction of the constitution. If the resolution was inoperative against the appellant its invalidity arose not from any constitutional prohibition against its adoption but because of the lack of power by the board of directors, under the general principles of law in relation to contracts, to adopt it.

No constitutional question is involved in this appeal and it should have been taken to the Appellate Court. It will be transferred to the Appellate Court for the First District.

*Cause transferred.*