## W. A. Thomson, trading as W. A. Thomson & Company, Appellant, v. Alexander W. Thomson et al., trading as Thomson & McKinnon, Appellees.

## Gen. No. 26,270.

1. BOARDS OF TRADE AND EXCHANGE, § 15*—*what is effect of change of rules.* Where plaintiff employed defendants, members of the Board of Trade, to purchase corn for July delivery under a contract subject to regulations and customs of the Board of Trade and all amendments made thereto, and thereafter the board passed a resolution requiring its members to settle all contracts for July delivery at less than the market price, such resolution did not affect plaintiff's contract and defendants were not relieved thereby from their obligation either to deliver the corn or to settle at the market price.

2. CORPORATIONS, § 70*—*what changes may be made in by-laws.* While a corporation may amend its by-laws or adopt resolutions making reasonable changes in its business methods, it has no power to make changes which will affect injuriously the rights of strangers.

3. BOARDS OF TRADE AND EXCHANGE, § 15*—*how rules referred to in contract are construed.* The provision in a contract making it subject to the regulations of the Board of Trade "and all amendments that are made thereto" cannot be construed to apply to amendments made subsequent to the contract, the wording of the provision being in the present tense and not expressly relating to the future.

4. BOARDS OF TRADE AND EXCHANGE, § 15*—*what amendments may be enacted.* An amendment to a regulation of the Board of Trade, subject to which a contract is made, can affect only administrative matters and cannot deprive a party of a substantial vested right.

5. BOARDS OF TRADE AND EXCHANGE, § 15*—*what is effect of penalty for violation of rules.* The incurrence of the penalty of forfeiting membership in the Board of Trade does not relieve members from fulfilling their contractual obligations.

6. PRINCIPAL AND AGENT, § 105*—*what is agent's power as to contract.* An agent has no right to impair a contract which he has made for his principal.

7. CONTRACTS, § 323*—*when persons may sue for breach of contract.* Where one party refuses to carry out the terms of a contract, the other may keep the contract alive, himself ready and able

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

to perform, and at the end of the time specified for the performance sue and recover.

HOLDOM, P. J., dissenting.

Appeal from the Municipal Court of Chicago; the Hon. CHARLES A. WILLIAMS, Judge, presiding. Heard in this court at the April term, 1920. Reversed and remanded. Opinion filed February 19, 1921. Rehearing denied February 28, 1921.

KEITH L. BULLITT and KING, BROWER & HURLBUT, for appellant.

HENRY S. ROBBINS, for appellees; SILAS H. STRAWN and WALTER H. JACOBS, of counsel.

MR. JUSTICE MCSURELY delivered the opinion of the court

Plaintiff brought suit for moneys claimed to be due him from the defendants on account of a purchase of a quantity of corn. Upon trial the court directed the jury to return a verdict for defendants, and judgment was accordingly entered, from which plaintiff appealed. The appeal was taken directly to the Supreme Court upon the claim that a constitutional question was involved. Defendants moved to transfer the cause to the Appellate Court because no question of the construction of the constitution was involved, and this motion was allowed, the reasons moving the Supreme Court appearing in *Thomson v. Thomson,* 293 Ill. 584. In this opinion the facts are stated, in substance, as follows:

The defendants are brokers in Chicago and members of the Chicago Board of Trade. The plaintiff, a grain dealer in Louisville, Kentucky, employed defendants on May 23, 1917, to buy for him 10,000 bushels of No. 2 corn for July delivery at $1.57⅛ a bushel, and on June 12 to buy 10,000 bushels more at $1.58 a bushel. The defendants made both purchases, the purchase price for the two lots amounting to

$31,512.50, and on July 31, none of the corn having
been delivered, the plaintiff tendered that amount to
the defendants and demanded delivery of the corn.
The defendants refused to deliver the corn, having
previously settled the plaintiff's contracts with the
sellers on the basis of $1.65 a bushel, the price fixed
by a committee under the authority of the Board of
Trade by virtue of the resolution of July 5, 1917,
hereinafter quoted.    They informed plaintiff that
Clement, Curtis & Company were the sellers, and
thereupon plaintiff tendered the purchase price to
Clement, Curtis & Company and demanded delivery
of them, but they, too, refused.    The market price
of the corn on that day was $2.36 a bushel.    Clement,
Curtis & Company were not the original sellers of
the corn, but under the rules of the Board of Trade
they were substituted for the sellers and the defend-
ants became guarantors of the ultimate fulfillment of
the original contracts.    The contracts were made in
accordance with and subject to the rules, regulations
and customs, of the Board of Trade and the rules,
regulations and requirements of its board of directors
and all amendments that are made thereto.    July 5,
1917, the board of directors of the Board of Trade
adopted the following resolution:

"Whereas, by reason of the state of war which
now exists, it becomes the patriotic duty of all to
second the efforts of our government to prevent un-
due price increase in food products; now, therefore:

"*Be, it resolved,* that after the 5th day of July
1917, all trading by members of this exchange in corn,
for delivery, by grade alone, in Chicago in the month
of July, either for immediate or for future delivery,
shall cease, and any member so trading after said
day shall be deemed to have committed a grave of-
fense against the good name of this association.

"*Be it further resolved,* that the president shall
appoint a committee of three from the membership
at large, to be approved by this board, who shall pro-

ceed at once to determine the true commercial value of the contract grades of July corn in Chicago on the 5th day of July, 1917, and that the price, when so established by said committee, shall be the basis upon which shall be settled all contracts for July delivery open at the close of business on the 5th day of July, 1917, except such open contracts as shall be performed for delivery during the month of July, or shall be settled by the agreement of the parties.  Every seller not notifying his purchaser in writing before 1:15 o'clock P. M., July 9, 1917, of his intention to settle his July, 1917, contracts upon the basis of the price thus fixed shall be deemed to have elected to deliver the property; and in case of his failure to deliver, settlement shall be made at the price fixed plus the penalty provided in rule 23, and to this extent the resolution of the board of directors of June 13, 1917, is hereby modified.''

The committee appointed under this resolution fixed the value of July corn at $1.65 a bushel, and on July 9, Clement, Curtis & Company notified the defendants of their intention to settle the plaintiff's contracts for July corn upon the basis of that price, and the defendants, in spite of the plaintiff's instructions to the contrary, made the settlement, remitting the profits to the plaintiff's Louisville agents.

The Supreme Court further said:

''There is no doubt that the application of the resolution of July 5, to appellant's contracts would impair the obligation of them.  Before the resolution the seller was bound to deliver the corn during the month of July, and if he did not he was bound to pay damages, if the price went up, to the extent of the excess of the market price over the contract price. Under the resolution he would not be bound to deliver the corn, and the measure of damages he would be required to pay was the difference between the contract price and $1.65 a bushel—the price fixed by the resolution.''

And also:

"If the resolution was inoperative against the appellant its invalidity arose * * * because of the lack of power by the board of directors, under the general principles of law in relation to contracts, to adopt it."

One of the general principles of law in relation to contracts is that while a corporation may amend its by-laws or adopt resolutions making reasonable changes in its methods of conducting its business, it has no power to make changes which will affect injuriously the rights of strangers. *Illinois Conference Female College v. Cooper*, 25 Ill. 133; *Peterson v. Gibson*, 191 Ill. 365; *Interstate Building & Loan Ass'n v. Wooten*, 113 Ga. 247; *Ayers v. Grand Lodge*, 188 N. Y. 280; *Peck v. Elliott*, 79 Fed. 10; *Annan v. Hill Union Brewery Co.*, 59 N. J. Eq. 414; *Insurance Co. v. Connor*, 17 Pa. St. 136.

It is urged that the Chicago Board of Trade has inherent power at all times to make regulations controlling its members in respect to the manner of conducting the business on the board; that because of conditions arising out of the war, so much grain had been bought as to cause a great increase in the market value, which threatened to go beyond all reasonable bounds; that under such conditions the resolution in question was adopted as a wise and patriotic preventative of unreasonably high prices. Opposing counsel question the altruistic motives of the members of the board in procuring this resolution and insist it was simply a protective measure for the benefit of dealers who were under contract to deliver grain. It is not necessary for us to settle this controverted point. Assuming the reasonableness and propriety of the resolution in so far as it affected the members of the board, the question is: Should nonmembers or the members be made to pay losses resulting therefrom? It seems a logical conclusion from the general principle stated in the above cases that the stranger

who has a contract made prior to the adoption of the resolution should not be compelled to suffer this loss.

Did plaintiff make his contracts of purchase subject to any resolutions or any amendment to the by-laws which the board might subsequently make? Defendants assert that he did, by the provision which says that all the orders for purchase and sale are made "in accordance with and subject to rules, regulations and customs of the exchange upon which the order is to be executed, and the requirements of its board of directors and all amendments that are made thereto." Defendants urge that these last words mean any rule promulgated after the contracts are made. Such a provision will not be construed to relate to subsequent amendments unless it is expressly so stated. *Peterson v. Gibson,* 191 Ill. 365; *Covenant Mut. Life Ass'n v. Kentner,* 188 Ill. 431; *Baldwin v. Begley,* 185 Ill. 180. The above words, "and all amendments that are made thereto," are not express words relating to the future; they are in the present tense. If there is doubt as to this, they must be construed not to apply to amendments made subsequent to the contract. As was said in *Annan v. Hill Union Brewery Co., supra:* "The court leans against giving the by-laws a retrospective effect. * * * Otherwise, a contract would be anything the directors might, from time to time, choose to make it. The meeting of minds, so necessary to the conception of a contract, would be purely notional."

Even if these words are construed as including future amendments, they could contemplate only rules and regulations concerning administrative matters and not a regulation depriving the plaintiff of a substantial vested right. Plaintiff could not reasonably anticipate the passage of an extraordinary resolution which undertook arbitrarily to fix the price at which the sellers could settle for the grain bought by plain-

tiff, regardless of the market price. *E. Hess Malting Co. v. Warren,* 15 Ill. App. 596.

Much is said of the hardship upon defendants if they had settled with plaintiff at the market price, thereby earning a very small commission but incurring the penalty of forfeiting their memberships in the board, which are of large value. Even the danger of such a penalty would not relieve defendants from the operation of rules of law with reference to contracts. However, the resolution permitted settlement by delivery of grain, which was by express terms contemplated by the contract of purchase; so by delivery defendants would have been within the approval of the resolution. If they could not buy for such delivery except at a price involving loss, there is no reason in justice why plaintiff rather than the defendants should be compelled to stand this loss.

The fact that defendants were agents for the plaintiff in making the purchase does not relieve them from liability. The agents had no right to impair plaintiff's contract. *Saladin v. Mitchell,* 45 Ill. 79; *Samuels v. Northrup Nat. Bank,* 234 Ill. 9; *Flowers v. Bush & Witherspoon Co.,* 254 Fed. 519.

It is well settled that where one party refuses to carry out the terms of the contract, he may among other things keep the contract alive, himself ready and able to perform, and at the end of the time specified for the performance sue and recover. *Lake Shore & M. S. Ry. Co. v. Richards,* 152 Ill. 59; *Stephen M. Weld & Co. v. Victory Mfg. Co.,* 205 Fed. 770; *Staley v. Lyman,* 151 Ill. App. 137.

Plaintiff's counsel attacks the resolution in question as not being within the power of the board of directors to promulgate. It is not necessary for us to pass upon this, for if plaintiff is not affected thereby he cannot raise any question as to the manner of its adoption.

For the reasons above indicated a majority of this

court is of the opinion that plaintiff was not affected by the resolution aforesaid; that the defendants were not relieved thereby from their obligations either to deliver the amount of corn purchased or to settle at the market price; that the resolution impaired in no way contracts between the parties, and that the trial judge was in error in this respect and should not have peremptorily instructed the jury, but should have submitted the case with proper instructions as to the law as herein indicated.

The judgment is therefore reversed and the cause is remanded.

*Reversed and remanded.*

DEVER, J., concurs.

HOLDOM, P. J., dissenting.