22064. HELMLY v. SCHULTZ et al.

ARGUED JUNE 10, 1963—DECIDED JULY 3, 1963—
REHEARING DENIED JULY 23, 1963.

*Aaron Kravitch,* for plaintiff in error.

*Stephens & Gignilliat,* contra.

ALMAND, Justice. On July 3, 1961, petitioner filed suit in the Superior Court of Chatham County against Mrs. Adele H. Schultz seeking specific performance of an alleged contract for the sale of 714-2/7 shares of corporate stock. Petitioner also named as defendants the corporation and five other stockholders and prayed, in substance, that they be enjoined from doing any acts which would interfere with petitioner's right to have his alleged contract with Mrs. Schultz specifically performed. An ex-parte restraining order was granted against all the defendants enjoining them, in substance, from doing anything calculated to affect the rights of the petitioner until such time as the issues of the petition were heard and determined. Mrs. Schultz demurred to the petition both generally and specially. Upon a hearing the general demurrer was sustained and the petition was dismissed.

As was stated above, petitioner predicates his claim for relief on an alleged contract. In order to determine the rights of petitioner it is necessary that we examine the case in some detail.

■ Petitioner and Mrs. Schultz are stockholders in the defendant corporation, I. C. Helmly Real Estate Company—a closely-held real estate investment corporation. Petitioner, Mrs. Schultz and the other individual defendants are the sole stockholders of the defendant corporation and hold their stock in equal proportions, each owning 714-2/7 shares.

A bylaw of the defendant corporation provides as follows: "No stockholder shall sell or give away his stock in the corporation without first offering to sell the same to the remaining stockholders substantially in proportion to the stock already owned by them. Such remaining stockholders shall have fifteen (15) ·days

from the date such offer is made to them in which to purchase said stock before the same may be given or sold to any other person. The price to be paid by such remaining stockholders for such stock shall be the book value of the stock on the first day of the month in which said offer is made. A reference to this bylaw shall appear on each stock certificate issued by the corporation."

Thus, every stockholder in the defendant corporation was contractually bound to offer his stock to the other stockholders substantially in proportion to the stock already owned by them before otherwise disposing of his or her stock. See *Gwin v. Thunderbird Motor Hotels*, 216 Ga. 652 (2) (119 SE2d 14).

The bylaw says that a stockholder has no *right* to *dispose* of his stock without first making the prescribed offer, thereby imposing a condition precedent on the *right* to sell or give away stock to any particular stockholder or stranger. Thus, if a stockholder did not comply with the bylaw a sale by him of his stock would be without right.

But the bylaw, by its language, does not attempt to make an offer of its own force or transform an offer not in compliance with the bylaw into an offer which complies with the bylaw. If a stockholder, contrary to the provisions of this bylaw, offered all his stock to an outsider before offering it pro rata to all existing stockholders, another existing stockholder could not form a contract by accepting that offer. The fact that a stockholder had no right to make such an offer would not transform that offer into an offer which the stockholder *did* have a legal right to make and which could be accepted as such.

With this in mind let us turn our attention to the offer and the purported acceptance which plaintiff claims forms the contract which he seeks to have specifically performed. The offer reads: "I, Adele H. Schultz, do hereby offer my stock in the I. C. Helmly Real Estate Company, Inc., *to the stockholders* of the said corporation according to the bylaws, *provided* all the stock owned by me is purchased at the same time and paid for in cash by the stockholders purchasing same." (Emphasis supplied.) The purported acceptance read in pertinent part: "According to the bylaws I accept your offer and will buy my proportion plus any and all of your stock that the other stockholders fail to take.

Thereby you are assured of being paid in cash and selling your entire stock." It is upon this offer and this purported acceptance that plaintiff claims to have a contract for the sale of all 714-2/7 shares.

The offer was made to the *stockholders,* not to any *one stockholder.* It was "according to the bylaws." "According to the bylaws" obviously means "substantially in proportion to the stock already owned by" the existing stockholders. The offer then imposed a condition—that "all the [offered] stock . . . [be] purchased at the same time and paid for in cash by the *stockholders* [plural] purchasing same." (Emphasis supplied.) The law allows a party to make a conditional offer. Whether or not Mrs. Schultz could, by adding such a condition to her offer, still comply with the *bylaw* is a question which, although we will refer to later, is not material to a determination of the question of whether or not this offer was "accepted" by plaintiff so as to form a binding contract.

As we construe it, then, this offer was to *all* the *stockholders*— each in his proportionate share (as provided by the bylaws)— and was to be operative only in the event each stockholder bought his proportionate part which was offered to him. Thus, unless all bought, the offer was no good. And, the offer could not be snapped up by one to whom it was not made. An offer can be accepted only by the person to whom it was made. *Milner Hotels, Inc. v. Black,* 196 Ga. 686 (27 SE2d 402). This construction coincides with the obvious purpose of the bylaw which, as stated by the trial judge, was "to keep the stock ownership in equal proportion among the original stockholders. . ." There may have been some thought that the bylaw would operate to keep outsiders from obtaining a voice in the management of this closely-held corporation, but the bylaw could so operate only in the event that each existing stockholder took his proportionate share of the stock of the retiring stockholder for, by the terms of the bylaw, the retiring stockholder was free to do anything he or she wished to do with his or her stock after nonacceptance of a proportionate offer. If, when they formed the corporation, it was the intention of the stockholders to keep outsiders from owning stock in the corporation they could have easily provided that

after the proportionate offer had become ineffective by reason of nonacceptance the offered stock should, before being sold or given to an outsider, be offered to any remaining stockholder or stockholders willing to purchase it. Instead the bylaw was a prohibition against that very thing. Not only did it limit sales to outsiders but it also limited selling a disproportionate part of the stock to an existing stockholder.

The offer was never "accepted" so as to form a valid contract for the reason that the conditions above were never satisfied. "[N]one of the other stockholders of the corporation accepted the offer of Mrs. Adele H. Schultz. . ." (Paragraph 11 of plaintiff's petition), and plaintiff did not satisfy Mrs. Schultz's condition to the effect that all of the stock be bought by offering to take all of the stock himself. Thus, there was no contract and petitioner is not entitled to specific performance.

■ Petitioner prays for an injunction against Mrs. Schultz restraining her from conveying or disposing of any of her shares. It is clear from plaintiff in error's petition that this prayer is incidental to the prayer for specific performance. Throughout, plaintiff predicates his case on the theory that he has a specifically enforceable contract for all of Mrs. Schultz's shares. It is clear from our discussion above that petitioner is not entitled to an injunction on this ground.

In addition, the petition most strongly construed against the pleader shows that the applicable provision of the bylaws appears on each stock certificate issued by the corporation. Thus any purchaser from Mrs. Schultz would take with notice of the bylaw and therefore subject to the rights of existing stockholders.

■ In addition to the other relief sought, petitioner prays for an injunction permanently enjoining the defendant stockholders from adopting any resolution for the change of the bylaws of the corporation pertaining to the transfer and sale of the stock of the corporation.

"While a private corporation may at any time exercise in a lawful manner its inherent right to amend, alter, or repeal its bylaws, no amendment, alteration, or repeal thereof can have the legal effect of defeating any vested right of its stockholders." *Interstate Bldg. &c. Assn. v. Wooten,* 113 Ga. 247 (38 SE 738).

Having held that the petitioner in the instant case has no vested contract right for the purchase and sale of the 714-2/7 shares in question, we thus hold that he is not entitled to the injunction here prayed for on this ground.

We further hold that the allegations of his petition are not sufficient to entitle him to such an injunction on any other ground. Petitioner does not show that an amendment or repeal of the bylaw governing the sale of stock would defeat any right vested in him. Presumably the corporate articles and bylaws set forth the procedure for amending or repealing the bylaws. Petitioner holds his stock subject to these, *Gwin v. Thunderbird Motor Hotels*, 216 Ga. 652, supra, but nowhere are these set forth in the petition. Petitioner is thus not entitled to an injunction restraining a change in the corporate bylaws. Cf. *Crittenden v. Southern Home Bldg. &c. Assn.*, 111 Ga. 266 (36 SE 643).

The court below was correct in sustaining defendant's general demurrer.

*Judgment affirmed. All the Justices concur.*