A91A1035. BROWN et al. v. MOMAR, INC.
(411 SE2d 718)

SOGNIER, Chief Judge.

H. Stephen Brown, individually and as executor of the Estate of Henry Brown, and C. Roger Brown brought suit against Momar, Incorporated to determine their rights in certain stock issued by Momar. The parties filed cross motions for summary judgment on the issue of the Browns' ownership rights in the stock. The trial court granted partial summary judgment in favor of Momar and denied the Browns' motion, and the Browns appeal.

Henry Brown, appellants' father, was an officer and shareholder in appellee. At the time of his death on May 2, 1986, he owned 250,000 shares of Class A stock (the "stock") issued by appellee. This property passed under the residuary clause of the decedent's will, which devised the remainder of his estate to his wife, Juanita Brown, if she survived him, and to his sons, appellants, per stirpes if his wife predeceased him. Juanita Brown timely filed with the probate court a statement made pursuant to OCGA § 53-2-115 in which she renounced her interest in the stock. Under the assumption that pursuant to OCGA § 53-2-115 (c) they received the stock under the residuary clause as successor legatees, appellants then requested that appellee register the ownership transfer and reissue the stock to them. Appellee did reissue the decedent's stock to appellants, but a month later appellee demanded that appellants surrender the newly issued certificates in exchange for a payment of the book value of the stock plus ten percent. Appellee contended this action was required by the shareholders' agreement to which the stock was subject, but appellants disagreed. They refused appellee's demand and filed this action to determine their rights to the various holdings of the decedent in appellee.

The stock certificate issued to the decedent provided that the "sale, assignment, transfer, pledge, mortgage or other encumbrance of the stock represented by this certificate or any interest or equity therein is limited by the terms and conditions of a certain [stock agreement, as amended]; the terms and conditions of said agreement and all supplemental agreements and amendments thereto are incor-

porated herein by reference; any . . . transfer . . . contrary to the provisions of said agreements and amendments shall be null and void." The parties have stipulated that at the time of the decedent's death, the relevant stock agreement was the agreement executed on December 10, 1971, and amended on December 8, 1972. The 1971 agreement provided in pertinent part: "4. In the event of the death of any Stockholder in [appellee], . . . the heirs, executors, administrators and representatives of such deceased Stockholder shall have the following options: (a) To offer to convey said stock immediately to [appellee] upon terms and conditions hereinafter recited, . . . or (b) To hold said stock for a period of 12 months [and then] offer said stock to [appellee] upon terms and conditions hereinafter recited . . . . It shall be mandatory that the heirs, executors, administrators and personal representatives of such deceased Stockholder offer said stock . . . in accordance with either (a) or (b) above, and upon such offer it shall be mandatory that [appellee] purchase the same . . . [at] the book value thereof . . . plus 10%. . . ." Paragraph 6 provided that "[t]he Class 'A' stock of any Stockholder may be transferred (including testamentary transfer) to the issue or lineal descendants of such Stockholder." The 1972 amendment to the stock agreement added a new paragraph 11 providing that any holder of Class A stock could make an even exchange for Class B stock, and that "[a]ny holder of Class 'A' stock or of Class 'B' stock [obtained in such an exchange] may transfer such . . . stock by inter vivos or testamentary transfer to [his] issue or lineal descendants," and providing further that "the provisions of this Paragraph shall amend and supersede the provisions of Paragraphs 4 and 6 of the [1971] stock agreement."

Appellants contend that once their mother executed and filed her renunciation, under OCGA § 53-2-115 (c) the stock passed to them under the residuary clause of the decedent's will as though she had predeceased him, and that since a testamentary transfer of the stock to the decedent's issue was permissible under paragraphs 6 and 11 of the stock agreement as amended, appellee was not entitled to demand a tender of the stock under paragraph 4. We agree and reverse.

1. To resolve the questions presented in this appeal, we first must determine whether Juanita Brown was entitled to renounce or disclaim her interest in the stock. OCGA § 53-2-115 (a) authorizes a legatee under a will to "renounce in whole or in part the succession to any property or interest therein." Upon filing of the requisite documents, "[u]nless the decedent . . . has otherwise indicated by his will, the interest renounced and any future interest . . . shall pass as if the person renouncing had predeceased the decedent . . . . [T]he renunciation relates back for all purposes to the date of death of the decedent." Id. at (c) This renunciation right, however, is limited by paragraph (d) of OCGA § 53-2-115, which prior to July 1, 1988 provided

that "[t]he following shall bar the right to renounce as to the property: (1) [a]ny assignment, conveyance, encumbrance, pledge, or transfer of property therein or any contract therefor; (2) [a]ny written waiver of the right to renounce or any acceptance of property by an heir . . . ; or (3) [a]ny sale or other disposition of property pursuant to judicial process, made before the expiration of the [statutory renouncement period]."

It is undisputed that Juanita Brown filed the requisite documents within the statutory time period; therefore, her renunciation was valid under OCGA § 53-2-115 unless the stock transfer restriction contained in the stock agreement constituted the type of "encumbrance" that under OCGA § 53-2-115 (d) (1) would bar her right to renounce the legacy of the stock. Paragraph (d) (1) has not been construed in any reported decision of our appellate courts, so we must resort to rules of statutory interpretation to ascertain its meaning. Applying the rule that no segment of a statute should be lifted out of context and construed without consideration of all other parts of the statute, *City of Jesup v. Bennett*, 226 Ga. 606, 609 (176 SE2d 81) (1970), we must construe subparagraph (d) (1) in the context of the other subparagraphs in (d). Viewed as a whole, paragraph (d) refers to acts of the *disclaimant* that would be inconsistent with an intent to renounce a property interest. See ULA, Uniform Probate Code (1983 ed.) § 2-801 Comment to subsection (d), p. 167. Accordingly, we hold that the term "encumbrance" in OCGA § 53-2-115 (d) (1) refers to an encumbrance placed on the property by the disclaimant, not an encumbrance existing at the time of the decedent's death. Adoption of the construction urged by appellee — that the statute refers to pre-death encumbrances — undoubtedly would render most properties ineligible for renunciation, which would be inconsistent with the apparent legislative purpose of facilitating disclaimer for tax planning purposes under 26 USC § 2518, see Redfearn, Wills & Admin. in Ga. (5th ed.), Legacies & Devises § 162.1, pp. 348-349, and with the broad renunciation rights long established at common law. See *Daniel v. Frost*, 62 Ga. 697, 707-709 (2) (1879).

Consequently, we find that Juanita Brown's renunciation of the stock was effective under OCGA § 53-2-115 (a) and (b) and was not barred by (d). As a result, the interest in the stock she otherwise would have received passed pursuant to OCGA § 53-2-115 (c). Since the decedent did not indicate in his will how property bequeathed thereunder was to be devised in the event of a renunciation, the stock passed as if Juanita Brown "had predeceased the decedent." Id. The devolution of the stock thus became subject to the residuary clause of the decedent's will and passed to appellants per stirpes.

2. Next, we must consider whether the stock transfer restrictions contained in the stock agreement apply to this transaction, and if so,

whether the disposition of the stock is governed by paragraph 4 or paragraph 11. As a general rule, restrictions on the transferability of stock are enforceable in this State, see *Horne v. Drachman*, 247 Ga. 802, 803-804 (1) (280 SE2d 338) (1981); *Helmly v. Schultz*, 219 Ga. 201, 202-205 (1) (131 SE2d 924) (1963), and are similarly enforceable against subsequent transferees provided the restrictions are stated conspicuously on the face of the stock certificate. See *Helmly*, supra at 205 (2); see also OCGA §§ 11-8-202 (1); 11-8-204.[1] The stock certificate at issue carried a clear and unequivocal reference to the stock agreement, and thus the transfer restrictions in that agreement were enforceable against the decedent and anyone who acquired the stock from him. Since the decedent's beneficiaries could receive no greater property right or interest than that held by the decedent, and given that the restrictions on the interest at issue were valid and enforceable, the "property or interest" Juanita Brown renounced pursuant to OCGA § 53-2-115 and to which appellants then acceded was the stock subject to the transfer restrictions contained in the stock agreement.

Paragraph 11 and paragraph 6, as amended, permit a "testamentary transfer" by the decedent to appellants. The stock passed to appellants under the residuary clause of the decedent's will; therefore, the transfer was "testamentary." See Black's Law Dictionary, p. 1644 (4th ed.) ("testamentary" defined as "[p]ertaining to a will or testament; . . . [d]erived from, founded on, or appointed by a testament or will"). The fact that appellants received the stock only because of their mother's renunciation is irrelevant to the application of the stock agreement provisions. Appellants clearly would have received the stock by "testamentary transfer" under the residuary clause if their mother had predeceased their father in *fact*, and the clearly stated legislative intent of the renunciation statute is that upon renunciation she is considered to have predeceased him by operation of *law*. See OCGA § 53-2-115 (c). Since the renunciation relates back to the date of the decedent's death, id., and considering also that no legatee under a will takes legal title until the executor assents, see OCGA § 53-2-108, the effect of the renunciation was the same as if Juanita Brown had indeed predeceased the decedent — i.e., appellants took the stock by testamentary transfer under the residuary clause. Appellee's contention that the renunciation should not be permitted because it was contrary to the decedent's intent to will the stock to his wife is without merit because the decedent is presumed to have executed his will with knowledge of the law that entitled his heirs to disclaim his testamentary bequests, see *Carnegie v. First Nat.*

---

[1] This case arose before the 1988 enactment of the Georgia Business Corporation Code, but we note that OCGA § 14-2-627 also authorizes the type of stock transfer restriction at issue here.

*Bank*, 218 Ga. 585, 590-591 (1) (d) (129 SE2d 780) (1963), and thus was aware that his estate plan could be altered after his death if his beneficiaries exercised their renunciation right.

Accordingly, we find the transfer of the stock to appellants was permissible under paragraphs 6 and 11 of the stock agreement, and hold the trial court erred by granting summary judgment to appellee and denying summary judgment to appellants.

*Judgment reversed. McMurray, P. J., and Andrews, J., concur.*

DECIDED SEPTEMBER 30, 1991 —
RECONSIDERATION DENIED OCTOBER 17, 1991 —

Booth, Wade & Campbell, L. Dale Owens, for appellants.
Bodker, Ramsey & Andrews, Harry J. Winograd, for appellee.

